No. 44,654

Virgil W. Bodine and Leo E. Ashner, *Appellees*, v. City of Overland Park, *Appellant.*

(424 P. 2d 513)

Opinion filed March 4, 1967.

*Donald C. Amrein,* of Mission, argued the cause and was on the brief for the appellant.

*Peter A. Martin,* of Olathe, argued the cause, and *John W. Breyfogle, Jr.,* also of Olathe, was with him on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action by landowners pursuant to K. S. A. 12-712 to determine the reasonableness of action taken by the governing body of the city of Overland Park in denying their application for R-4 zoning under the zoning rules and regulations of the city. The trial court after hearing the matter entered judgment for the plaintiffs ordering the property in question rezoned, and the city has duly perfected an appeal.

While the appellant has assigned numerous points of error, the basic question controlling our decision is whether the trial court adopted the correct legal theory upon which to determine the issue presented by this action.

In their petition the landowners, Virgil W. Bodine and Leo E. Ashner (plaintiffs-appellees), after stating the necessary preliminary facts, allege that they are the legal owners and hold options on the real property in question which is located within the city of Overland Park and subject to its zoning ordinances; that on the 2nd day of June, 1965, they made application to the city planning commission of Overland Park for the rezoning of their tract of property (legally described in the petition); and that the property has a frontage of 331 feet and is 486.15 feet deep. The petition then alleged:

"4. That a portion of the property involved was and is now zoned for duplexes, which is an R-2 classification under the ordinance. That a portion of the property was then and is now zoned for single family residences, which

is an R-1 classification under the ordinance. *Plaintiffs requested R-4 garden apartment zoning.*

"5. That on June 28, 1965, a hearing was had before the City Planning Commission which recommended denial of the rezoning application. That on July 19, 1965, the matter was presented to the City Council which likewise denied the rezoning application. No protestors appeared at the Council Meeting though a so-called area protest was presented at the Commission Meeting. No valid reasons were given for the denial of the application for rezoning. Indeed, the Master Plan adopted by the City specifies apartment use of this land.

"6. That the property herein involved is located on the west side of heavily traveled U. S. Highway Number 69 and is separated from the main highway by a frontage road. That there are four duplexes immediately to the south of said property but the remaining area is substantially unimproved. That the property directly across U. S. Highway 69 is within the City of Mission, Kansas, and is zoned for industrial purposes.

"7. That the property for which plaintiffs requested rezoning is ideally suited for garden apartment use and its development as such would not have an adverse effect on adjacent properties. That several other properties within the City of Overland Park which are similarly situated have been rezoned for apartments upon the request of the owners and the city's action in denying plaintiffs' request is discriminatory. That plaintiffs have a clear legal right to have their property rezoned as requested and to erect thereon an apartment complex providing said buildings and construction comply with the other ordinances or regulations of the city which are pertinent.

"8. That any action, regulation or ordinance of the city as specifically applied to plaintiffs' property which restricts plaintiffs in the free use of their property must, in order to be valid, have a direct bearing to the public health, safety, comfort, morals, and public welfare. That the action of the city in denying plaintiffs' request to rezone their property bears no reasonable or direct relation to the public health, safety, comfort, morals or public welfare, but on the contrary is arbitrary, discriminatory, unreasonable, oppressive and invalid and deprives the plaintiffs of their property without due process of law contrary to the Fifth and Fourteenth Amendments to the Constitution of the United States and contrary to Section Eighteen of the Bill of Rights and Constitution of the State of Kansas." (Emphasis added.)

In the prayer the plaintiffs request that judgment be entered declaring the provisions of the zoning ordinance, insofar as it pertains to their property, to constitute an unauthorized and unwarranted exercise of the power of the city, and that the provisions of the zoning ordinance of the city as applied to their property are unconstitutional and deprive them of their property without due process of law and deny them the equal protection of the laws; that the court enter judgment finding and declaring them to have a clear legal right to use the premises described for R-4 garden apartment purposes; that the city be directed to approve the plain-

tiffs' application for the erection, maintenance and establishment of garden apartment buildings on said premises, providing they comply with the city's ordinance or regulations pertaining thereto; and that the city "be permanently enjoined from in any way interfering with the plaintiffs or anyone claiming by, through or under plaintiffs from using the above described premises" for garden apartment purposes.

The answer, among other things, denied that no valid reasons were given for the denial of the application; and that protestors appeared at the planning commission meeting and filed written protests of the proposed rezoning. Further, that the city council, after denying the R-4 application of the plaintiffs, referred the matter back to the planning commission for study as to an R-3 use and further recommendation to the city council, but that the plaintiffs refused to participate in such reconsideration and so advised the defendant.

The answer further alleged that the "Master Plan," referred to in the petition, has no force and effect as zoning and is only a guide or outline suggested by planning consultants employed by the city.

There was no record made of the proceedings conducted before the city council of Overland Park, and the trial court heard evidence as if the case were presented as a trial *de novo* upon the issues framed by the pleadings.

To fully comprehend the nature of the proceeding to be conducted under the foregoing statute, it is essential that we set forth the findings of fact made by the trial court and its conclusions of law before entering upon further discussion. They read as follows:

"1. Plaintiffs bring this action in the nature of an appeal from the city's refusal to grant them apartment zoning.

"2. Plaintiffs, with their respective spouses, are the owners of or hold options on a tract of real estate consisting of slightly less than 4 acres and located at 5700 Metcalf (U. S. Highway 69) in the City of Overland Park.

"3. The tract is located west of and adjacent to U. S. 69 Highway and is separated from the main traveled portion of the highway by a paved frontage road. It has a frontage of 331 feet and a depth of 486.72 feet.

"4. The property is currently zoned R-1 (single family residences) and R-2 (duplexes) under the city ordinances. The property immediately to the south is currently zoned R-2 and the first 4 dwellings are duplexes. The balance of the block, though zoned R-2, consists of single family residences. The land immediately to the west is vacant with no streets or improvements for a distance of approximately 3 blocks. It is heavily wooded. The land to the north of the subject property is vacant and unimproved for an even greater distance. The area to the east and across 69 Highway is within the

jurisdiction of the City of Mission and is presently zoned for industrial park purposes. An electrical products manufacturing concern is now in operation on the east side of U. S. 69 Highway slightly to the north of the subject property.

"5. Plaintiffs have already purchased about one-half of the subject property for $27,000 and have an option to purchase the balance which is in separate ownerships for an additional $50,500 making a total purchase price of $77,500.

"6. On June 2, 1965, the plaintiffs made application to the City Planning Commission of Overland Park for rezoning and asked that the tract be rezoned from R-1 and R-2 to an R-4 garden apartment classification. On June 28, 1965, a hearing was had before the City Planning Commission which recommended denial of the rezoning application. On July 19, 1965, the matter was presented to the City Council which likewise denied the rezoning.

"7. Prior to their application for rezoning, the plaintiffs had engaged Ward Haylett of the firm of Linscott, Kiene and Haylett, architects, to prepare preliminary plans for a luxury apartment complex. Mr. Haylett's firm has designed a number of high quality projects in the greater Kansas City area, including the Georgetown Apartments, which are comparable to plaintiffs' proposed project. Mr. Haylett appeared, with the plaintiffs and their attorney before the Planning Commission. Mr. Haylett presented a plat plan and various drawings including colored renderings. No property owner in the entire area appeared at the Council meeting to object to the project as proposed.

"8. In 1962 and 1963 the City of Overland Park retained the firm of Hare and Hare, city planners, to prepare a comprehensive plan for the entire area. The resulting plan was the product of a great amount of research and cost the city approximately $22,000. The comprehensive plan prepared by Hare and Hare, planning engineers, was never officially adopted by the city by ordinance. The comprehensive plan is, however, consulted and used as a guide by the Planning Commission and City Council for zoning in the city. The findings contained therein reflect the increasing demand for multifamily dwellings within the city. It was the opinion of the professional planners that the subject property should be designated for apartment usage. The plan recommends that apartments be located near such thoroughfares as U. S. Highway 69 because of their easy access to downtown Kansas City. It is specifically recommended that no house, of any type, should face or have direct access onto larger thoroughfares. Richard H. Kellenberg, a partner in the firm of Hare and Hare, assisted in the preparation of the plan and is still retained by the city as an adviser and attends all the Planning Commission meetings as he has done since the incorporation of the city. Mr. Kellenberg testified in his deposition as to the various factors considered in making a recommendation for land usage in a comprehensive plan and specifically described the reasons for this recommended apartment usage. There have been no changes in the immediate area which would cause him to change his recommendations favoring apartment usage.

"9. The refusal of the city to grant rezoning was based primarily on alleged public opposition and an assertion that to grant the request would

be spot zoning. Public opposition is not a proper consideration by itself to justify a refusal to grant rezoning nor can the implementation of a costly and professionally prepared master plan, even though not formally adopted by the city, be denominated spot zoning.

"10. Metcalf, or U. S. Highway 69, is a high-speed high capacity, controlled access, 4-lane, divided highway. The traffic count of vehicles passing the subject property in a 24-hour period as of July 3, 1965, was 16,610 vehicles. There is no reason to believe the traffic flow has decreased since July, 1965. Traffic on U. S. Highway 69, as it passes the subject property, is anticipated by the city's own professional planning engineers to be 9,000 vehicles in a single peak hour before the year 1982.

"11. The court finds that the property is not well suited for R-1 and R-2 usage; that it would be impractical to attempt to develop it as such; and the fact that it has remained idle for many years lends credence to its unsuitability for such purpose. The existence of heavy traffic on the adjacent highway and the industrial zoning across the street likewise tends to show its unsuitability for R-1 and R-2 classification development.

"12. The court further finds the property is ideally suited for apartment usage; that the city's 'unadopted' Comprehensive Plan and its retained expert so recommend; that its access to the frontage road eliminates any reasonable objection about traffic congestion due to the increased density; that it is only minutes away from downtown Kansas City; that there is a substantial demand for such usage; all of which overwhelmingly indicates that its most appropriate use would be for apartments.

"CONCLUSIONS OF LAW

"1. That this action is to test the reasonableness of the city's zoning ordinance as applied to the subject property and is specifically authorized under K. S. A. 12-712.

"2. That the zoning ordinance of the City of Overland Park, Kansas, insofar as it restricts plaintiffs' property to R-1 and R-2 classifications, is unreasonable in that it unduly restricts the use of plaintiffs' property without any legitimate bearing on the general public health, safety, comfort, morals and public welfare, and is therefore void.

"3. That plaintiffs, and those claiming by, through, over and under them, shall have the right to use the subject property for apartment usage in the manner as provided and permitted under classification R-4 of the zoning ordinance of the City of Overland Park.

"IT IS THEREFORE CONSIDERED, ORDERED, ADJUDGED AND DECREED that the real property described in plaintiffs' petition be and it is hereby ordered rezoned for the erection, maintenance and usage of an apartment building or buildings on the premises as prescribed by the R-4 zoning classification of the City of Overland Park, Kansas.

"IT IS FURTHER CONSIDERED, ORDERED, ADJUDGED AND DECREED that the costs of this action be taxed against the defendant."

Generally, it may be said the material factual statements contained in the foregoing findings (except the conclusions set forth

in findings No. 9, No. 11 and No. 12) are established by the evidence in the record.

The city filed a motion for a new trial and appropriate post trial motions, all of which were overruled. Thereupon, appeal was duly perfected by the city to this court.

The zoning rules and regulations of the city introduced in evidence are uncontroverted and disclose that the uses permitted in District R-4 include:

(1) Any use permitted in District R-3;

(2) Apartment houses, or multiple dwellings;

(3) Boarding and Lodging houses;

(4) Fraternity or sorority houses and dormitories;

(5) Hotels or Apartment hotels;

(6) Hospitals, sanitariums or homes for convalescents or aged, other than for the insane or feeble-minded or alcoholics or drug addicts;

(7) Private clubs or fraternal orders;

(8) Philanthropic or eleemosynary institutions, other than penal institutions; and

(9) Accessory uses customarily incident to any of the above uses, and located on the same lot, not involving the conduct of a business or industry. (Other qualifications and restrictions are included.)

Other evidence presented to the trial court which is not factually controverted is necessary before further consideration can be given to the basic contentions of the respective parties.

Ward Haylett, the architect for the apartment project which the appellees seek to erect on the land in question, testified that the planned construction would be called luxury apartments, renting from $225 to $250 per month; that the land area involved in the project is approximately 164,000 square feet (4 acres) and the density will be somewhere in excess of 2,000 square feet of land for each unit, with a total of about 75 units to be built. He further testified, and other evidence establishes, *that the R-3 garden apartment classification of the city of Overland Park requires a density of 3,000 square feet per unit, while the R-4 apartment classification requires a density of 2,000 square feet per unit.*

Leo Ashner, one of the appellees herein, testified that the north half of the property in question is now under contract dated in April, 1965, from two separate owners, for a purchase price of $40,000, and both of these contracts are contingent upon obtaining garden apartment zoning. He further stated that when they purchased the south half of the property for $27,000, they knew that apartment zoning had been rejected by the city at an earlier time.

Richard H. Kellenberg testified by deposition that he had been a city planner by profession since 1951; was a partner in the firm of Hare and Hare, planners; and that his firm had been planning consultants for the city of Overland Park since 1960. He further testified:

". . . In 1962 we prepared a comprehensive plan and report for the City for the purpose of guidelines and long range objectives on the proper development and growth of the City for the next 20-year period. The cost of this service was somewhere in the vicinity of $19,000. On this guide map which we prepared, the area in question here is shown as land usage for apartments. The primary consideration probably was the adjacent location to Highway 69, a high-speed, controlled-access highway. The four duplex units to the south of this project would provide a transition to a certain extent between single-family and apartment usage, probably a fairly shallow transition. It would be an advantage for apartment usage on this tract that the apartments would be entirely self-contained and their only access would be to a frontage road. In planning, I would consider the zoning in an adjacent city such as the city of Mission, which is east across Metcalf.

"The nature of this general neighborhood north of Johnson Drive varies from street to street or block to block as far as the size and value of the homes, and there is also substantial vacant property in the area, but over all, it has a very pleasant environment. There are woods and trees in a rolling topography. I would say it is a scenic and relatively attractive neighborhood up there, for the most part. There are some parts deteriorating, you might say, but for the most part it is a very nice-appearing part of the community from the standpoint of natural resources.

"This report and plan we prepared for the City is a guide which has been varied from by the City Council and I am sure it will be varied from in the future. It is impossible to prepare a plan that will dictate the use of property down to a given line on a map. It is to serve as a guide.

"*I do not believe this property is suitable for R-4 type of development or for apartments to be developed under the R-4 classification of the City. District R-4 is designed for control of one building on a platted lot and therefore a tract of several acres with several buildings would more appropriately be zoned District R-3.* District R-4 is an apartment house district which is developed and the regulations are such that you have a front yard, side yard, rear yard requirements that are adapted particularly to one lot with one apartment building situated on it.

"It is my opinion that the proper use of this property would be for apartments, but perhaps not at this time. *Normally anything larger than one small lot is more appropriately an R-3 zoning rather than an R-4 zoning.*

"I think the development of apartments on vacant property adjacent to single-family residences will probably have a tendency to lower the desirability or the value of the abutting single family. I think this is true probably, regardless of where it is. I think people enjoy open space, and if it is going to disappear, they would rather see it disappear in structural development something like they have themselves, rather than sizeable building structures

such as you have with an apartment project. I think from that standpoint it would depreciate the single-family property. Whether it would actually lower the sales value, I am not qualified to say." (Emphasis added.)

Another witness, William I. Shafer, a civil engineer and partner in a firm which had just completed a land use planning report for the city of Mission, testified:

". . . It is my opinion that the most appropriate use from a planning viewpoint, of the Bodine-Ashner tract, would be multiple family or industrial park. I am not stating whether it should be R-3 or R-4 classification under the Overland Park regulations, but that it would be most appropriately used for multi-family or industrial park. . . ."

The general land use plan prepared by the firm of Hare and Hare for the city of Overland Park, Kansas, discloses the tract in question to be included in a zone calling for "apartment—multi-family." The land use plan does not break down the "apartment—multi-family" use into R-3 or R-4 classifications.

One of the appellees, Virgil W. Bodine, testified he had been a home builder along with Mr. Ashner for nine years in Johnson County. He testified:

"I was present at the City Council meeting at the time this application was denied, and after such denial the Council voted to refer the matter back to the Planning Commission for an R-3 Garden Apartment study and recommendation back to the Council. Mr. Ashner and I decided not to participate in such further study for this R-3 classification.

"Prior to making this application, we had gone to expense in employing an architect and designing this apartment complex. If we had been granted R-3 zoning, the project would not have been as practical, and the number of units would have been reduced and the whole project would have to be re-planned, with considerable expense and duplication of effort and work. Even if I were willing to adapt the project, there was no assurance of R-3 zoning. . . . This property would not be economically suitable for an R-2 development as a whole, because a developer could not buy the property, build duplexes, and make a profit. As far as the property which we have title to now, we knew it was zoned R-1 and R-2 at the time we purchased it.

"We are ruling out only single family residences as a use for this land; duplexes could conceivably be used, possibly, this is true of any industrial or commercial property, that duplexes could be built, but we try to find the best use for a piece of ground."

It is to be particularly noted that all of the testimony and the evidence heretofore related was presented by the appellees as plaintiffs in this lawsuit. Plaintiffs' aerial photos show a single family home located on the tract in question. It was described as a farm house in argument.

The evidence of the city presented in defense consisted of the testimony of landowners in the area who protested any change in zoning of the tract in question on the ground that it would destroy the character of the neighborhood and the desirability of their property as residential homes.

The city also presented testimony of five members of the Overland Park City Council. The reasons advanced by these councilmen for the denial of the R-4 zoning classification were generally: (1) That the tract is too large to have as many units as the appellees intend to construct under the R-4 classification; (2) that a change in zoning to R-4 classification would change the character of the neighborhood; and (3) that since the R-4 zoning classification is a very high density zoning change, it would open the door toward further higher use to the north in this area. Upon all of the facts and circumstances presented by this case all councilmen considered an *R-4 classification* for the property in question to be spot zoning.

Mr. Garrison, one of the councilmen particularly interested in zoning changes, testified that in the last two years prior to the hearing there were three R-4 zoning applications granted, and the sizes of these tracts, respectively, were seven-tenths of an acre, one-half of an acre, and one acre. He said that R-4 zoning, as set up by the council, was for a small tract which was not suitable for R-1 or R-2 but too small a tract to be an R-3 classification. He further testified he did not have an opinion at the time of hearing whether R-3 zoning would be appropriate for this particular property, until it was really presented to the council. He said:

". . . The master plan for Overland Park shows this area to be apartments, but this is just a guide, it is not zoning. This master plan, in a general sort of way, recommends apartments along major thoroughfares where they are easily accessible to the metropolitan area, projected over a 20-year period. This area is not ready yet to be developed into apartments, and I am not opposed to apartments. . . ."

An attorney was permitted to testify for the appellees in rebuttal that in 1960 and 1961 he represented the owner of the south half of the Bodine and Ashner property here under consideration, and that an attempt at that time to get the property rezoned for R-3 garden type apartments was met by protests from the neighbors, and the planning commission indicated they should withdraw their application, which they did.

Protest petitions were filed by various landowners in the area, but they were insufficient to constitute a legal protest under the provisions of K. S. A. 12-708. These protest petitions were filed with the city planning commission, and the appellant made an attempt to have them introduced in evidence as "Exhibit E" through the city clerk in the trial of this case, but the trial court sustained an objection to their introduction. The city clerk for the city of Overland Park was permitted to testify that among her duties she was required to keep the official records of the city; that "Exhibit E" and its contents were the official records as far as zoning application No. 286 (the Bodine application) was concerned; and that the file contained protest petitions signed by persons who were opposed to this rezoning application.

The appellant assigns as error the admission and exclusion of evidence in various respects, but we find it immaterial to consider these points for the reasons hereafter assigned.

It may generally be said that unless a zoning ordinance can successfully meet the requirements of being reasonable in its application, and unless it is enacted for the purpose of protecting the public safety, health or welfare, it cannot be expected to meet with the approval of the courts.

On the subject of the city zoning in this connection the legislature has seen fit to enact K. S. A. 12-712. It provides:

"That any ordinance or regulation provided for or authorized by this act shall be reasonable, and any taxpayer or any other person having an interest in property affected, may have the reasonableness of any ordinance or regulation determined by bringing an action, in the district court of the county in which such city is situated, against the governing body of said city."

This section of the statute was first enacted in 1921 and has remained unchanged on the statute books of this state to the present date.

In the year 1925 a case involving this statute was before the Supreme Court in *West v. City of Wichita*, 118 Kan. 265, 234 Pac. 978, and the court said:

". . . When once the power to zone and to restrict uses of property in designated zones is recognized (and that is settled in this state by the Ware case) [*Ware v. City of Wichita*, 113 Kan. 153, 214 Pac. 451], then the particular classification for use made by the ordinance ought not to be set aside without substantial reason, specifically applicable thereto. . . ." (p. 266.)

Further in the opinion the court quoted the statute (then appearing

as R. S. 13-1106) and said the court in deciding the *Ware* case construed this section of the statute and:

". . . held that this statute, as far as it relates to the reasonableness of specific provisions of zoning ordinances, abrogates the general rule that ordinances of the city are presumed to be reasonable, and before a court should hold otherwise their unreasonableness should be established by clear and positive evidence, and has the effect of placing the person having an interest in the property affected upon an equal standing with the city upon the question of the reasonableness of the provisions in question of the ordinance. We construe this section of the statute as giving to any taxpayer or any other person having an interest in property affected a right to bring a suit in the district court *to test the reasonableness of the ordinance or any specific provisions thereof which affects his particular property in the use he desires to make of it;* that is, the suit does not have to be brought by the state on the relation of the county attorney or attorney-general, and the forum in which to bring the suit is made definite, but it may be doubted whether it in any way affects the question of the burden of proof. In any event, the person bringing such action is a plaintiff and has the ordinary burden of establishing his cause of action by preponderance of the evidence. *Before a court should set aside a specific provision of the ordinance, it should be made to appear affirmatively that it is unreasonable when applied to plaintiff's property and the specific use which plaintiff desires to make of it.*" (p. 268.) (Emphasis added.)

It was said in *Spurgeon v. Board of Commissioners,* 181 Kan. 1008, 317 P. 2d 798, that "In making this inquiry it is not enough to avoid the ordinance *because the use of property for a desired purpose is forbidden.*" (p. 1014.) (Emphasis added.)

Later decisions in actions brought under 12-712, *supra,* and a similar statute having application to counties (K. S. A. 19-2913, first enacted in 1939) have definitely established that the plaintiff in an action of this character has the burden of establishing his cause of action by a preponderance of the evidence. (*Konitz v. Board of County Commissioners,* 180 Kan. 230, 303 P. 2d 180; *Moyer v. Board of County Commissioners,* 197 Kan. 23, 415 P. 2d 261; and *Arkenberg v. City of Topeka,* 197 Kan. 731, 421 P. 2d 213.)

The statute authorizing this action says the taxpayer or other person having an interest in property affected may have the reasonableness of *"any ordinance or regulation"* determined by bringing an action. One may ask what ordinance or regulation, when an application for rezoning is *denied* by the city governing body, as in this case.

On the facts here the only *ordinance* the appellees could attack would be the one zoning the property in question under the R-1 and R-2 zoning classifications.

In speaking of the plaintiffs' burden of proof in cases of this type, recent decisions hold that it is incumbent upon those attacking *the action* of the governing body to show *the unreasonableness of such action.* (*Konitz v. Board of County Commissioners,* supra; *Moyer v. Board of County Commissioners,* supra; and *Arkenberg v. City of Topeka,* supra.)

It may be noted the language in 19-2913, *supra,* varies slightly from that in 12-712, *supra,* in that it is the reasonableness of *"any act or regulation"* that is to be determined by the district court in an attack where planning and zoning is undertaken by county officers. Nevertheless, recent decisions make no distinction by reason of this variance and cite cases construing these respective statutes interchangeably.

This construction of 12-712, *supra,* finds support only in the term *"regulation."* In a broad sense it must therefore be said *the action* of the city governing body, denying the requested zoning, *regulates* the specific use which the appellees desire to make of their property, *and is encompassed within the term "regulation."*

Under the foregoing construction of 12-712, *supra,* as applied to the facts in this case, it was incumbent upon the appellees in this action to sustain the burden of proving the unreasonableness of *the action* taken by the governing body of the city of Overland Park *in denying their R-4 garden apartment zoning request.*

A study of the trial court's findings and conclusions will disclose that it misconceived the basic issue to be determined in this lawsuit. The position taken by the appellees in their brief to uphold the trial court will best illustrate the point.

The appellees refer to language of legal critics who have severely condemned those cases in which the courts have felt obligated to rubber stamp the zoning authorities. They argue that in Kansas we have a full trial *de novo* in cases of this type because there is no record or transcript to review. They say in their brief:

". . . It is important to understand just exactly what trial *do novo* is. In an article entitled 'Trial De Novo—Panacea?' in 14 Baylor L. Rev. 135 (1962), the author states:

" 'Trial *do novo* in its broadest sense stands in dramatic contrast to the limited review of the substantial evidence rule. . . .

. . . . . . . . . . . . . . . .

" '. . . the trial court, in a true trial *de novo,* is entitled to and does substitute its judgment for the discretion of the administrative agency. . . . Accordingly, there would be no presumption in favor of the validity of the

administrative decision as there is under the substantial evidence type of review.' (p. 142.)"

To fully comprehend the appellees' position in this case it is necessary to quote several further passages from their brief. They say:

". . . A preponderance of the evidence justified an R-4 classification for apartment usage under these specific circumstances. It seems to us that our burden is established when we show that the present zoning is untenable and our requested zoning is reasonable. We shouldn't have to prove that all possible classifications other than the R-4 requested would be denied. . . . If our request is reasonable, and the present zoning unreasonable, then R-4 should be granted. A judicial preference for R-3 would appear to us to be unwarranted on the record but we would not have challenged the court's authority to so restrict the usage."

Further in the brief the appellees say:

". . . Plaintiffs firmly believe that the District Court had authority to do anything that the City Council might have done if substantiated by the evidence and record before the court. . . ."

Summarizing the appellees' position, they contend an action of this type is a trial *de novo* in which the burden of proof cast upon them is to show the reasonableness of the R-4 zoning classification which they requested for the property in question. This is not the law in actions instituted under 12-712, *supra*, or under 19-2913, *supra*, as construed by prior decisions of this court. In *Moyer v. Board of County Commissioners*, supra, the court said:

". . . before we proceed with a consideration of the facts it will be well to have before us the rules of law which will govern the extent of judicial consideration of the factual questions.

"The courts must be ever mindful of their limitations in reviewing discretionary orders of administrative bodies. It must be understood that the Board of County Commissioners had the right to prescribe zoning, the right to change zoning and the right to refuse to change zoning. *The power of the courts is limited to determining the reasonableness of the action taken by the Board.* The court should not substitute its judgment for that of the Board and should not declare its action unreasonable unless clearly compelled to do so by the evidence. (*Rich v. City of Wichita*, 189 Kan. 323, 369 P. 2d 378.) *There is a presumption that the Board acted fairly, reasonably and its act was not discriminatory. It is incumbent upon those attacking the action to show wherein the Board's action was unreasonable.* (*Konitz v. Board of County Commissioners*, 180 Kan. 230, 303 P. 2d 180.)" (p. 29.) (Emphasis added.)

Similarly, in the case of *Arkenberg v. City of Topeka*, supra, the court said:

"We note first the extent of judicial review of zoning action taken by a city.

"It must be understood that the governing body has the right to prescribe zoning, the right to change zoning and the right to refuse to change zoning. The power of the court is limited to determining (1) the lawfulness of *the action* taken, that is, whether procedures in conformity with law were employed, and (2) *the reasonableness of such action.* As to the second, the court may not substitute its judgment for that of the governing body and should not declare the action of the latter unreasonable unless clearly compelled to do so by the evidence. *There is a presumption that the governing body acted reasonably and it is incumbent upon those attacking its action to show the unreasonableness thereof.* (*Moyer v. Board of County Commissioners,* 197 Kan. 23, 415 P. 2d 261)." (pp. 734, 735.) (Emphasis added.)

The position taken by the trial court in this case has focused attention upon the need for authoritative guidance in proceedings of this nature. The only case which employs any discussion on the point is *Konitz v. Board of County Commissioners,* supra, and it consists of a memorandum opinion by the trial judge quoted in the court's opinion, ostensibly with the blessings of the court.

In most cases of this character appealed to the Supreme Court evidentiary matters are not in dispute. Either the parties agreed upon the facts, entered into stipulations, submitted a record based upon minutes taken before the governing body, or presented a record based upon evidence taken before the district court without contest.

In the instant case, however, the trial court excluded some evidence offered by the city and received other evidence offered by the appellees over the objection of the city.

We are informed the governing body of the city of Overland Park made no record of the proceeding which it conducted upon the appellees' R-4 zoning application. The district court heard all of the evidence anew.

The burden of proof in cases of this type has already been discussed. The statutory proceeding authorized by 12-712, *supra,* (and 19-2913, *supra*) is neither a trial *de novo* nor an appeal in the true sense of the word. When the trial court hears evidence anew in a case of this character, the proceeding resembles a trial *de novo,* but there the semblance ends.

It is to be noted the statutes (12-712, *supra,* and 19-2913, *supra*) do not set out the procedure to be used in the district court in proceedings of this nature. In *Appleby v. Board of County Commissioners,* 166 Kan. 494, 203 P. 2d 224, the court recognized this fact

and held that the trial procedure is governed by our code of civil procedure; that the defendants may defend the action, demur to the plaintiffs' evidence and appeal if the demurrer is overruled. While the *Appleby* decision was made prior to the adoption of our new code of civil procedure the basic rule must be the same. In other words, in the instant case the proceeding was to be conducted in accordance with the new code of civil procedure which became effective January 1, 1964. Incorporated therein is Article 4—Rules of Evidence. (K. S. A. 60-401 to 60-470, inclusive.) Thus, the reasonableness of the action taken by the governing body of the city of Overland Park in denying the appellees' R-4 garden apartment zoning application should be determined from the issues made up by the pleadings and the evidence submitted thereon in accordance with the rules of evidence. (See, *Hillebrand v. Board of County Commissioners,* 180 Kan. 348, 350, 304 P. 2d 517.)

Construing the appellees' petition most favorably, it alleges the action of the governing body of the city of Overland Park is unreasonable on the following grounds: (*a*) The master plan adopted by the city of Overland Park specified apartment use for the land in question; (*b*) the property in question is zoned R-1 and R-2 and is located on the west side of a heavily traveled U. S. highway and separated from the main highway by a frontage road; that there are four duplexes immediately south of the property, but the remaining area is substantially unimproved; that the property directly across the highway within the city of Mission, Kansas, is zoned for industrial purposes; (*c*) that the plaintiffs' property is ideally situated for garden apartment use and its development as such would not have an adverse effect on adjacent properties; and (*d*) that other properties within the city of Overland Park similarly situated have been rezoned for apartments upon the request of the owners.

The city in its answer admitted (*b*) but denied (*a*), (*c*) and (*d*).

At this point it may be said the trial court did not abuse the exercise of its power of discretion in excluding evidence offered by the city because the record as a whole discloses the excluded evidence to have been cumulative in nature, and the evidence which the trial court admitted over the objection of the city cannot be said to have prejudicially affected the substantial rights of the city.

The appellees by their own evidence established that they were seeking garden apartment zoning on a four-acre tract of land

under an R-4 apartment classification, which has a density limitation of 2,000 square feet per unit; and that garden apartment zoning, R-3, has a density limitation of 3,000 square feet per unit. In other words, the appellees were seeking an economic advantage by their request, which was not authorized by the zoning regulations as applied in practice by the governing body of the city of Overland Park.

The appellees in their brief seek to take advantage of a provision in K. S. A. 1965 Supp. 12-708, which reads: "Any amendment, supplement or change [in zoning] shall, if based upon the comprehensive land use plan, be presumed to be reasonable." It is argued the city of Overland Park is a first class city by reason of which K. S. A. 13-1109 applies, requiring the planning commission to make and adopt a master plan which shall be certified by the planning commission to the governing body of the city. It is argued the master plan in the instant case was prepared in accordance with this statute and submitted as a proposed zoning ordinance to the governing body of the city.

A provision of K. S. A. 1965 Supp. 12-708, however, provides:

". . . Upon the receipt of such recommendations, the governing body may adopt or may revise or amend and adopt such recommendations by ordinance. . . ."

In the instant case the governing body of the city of Overland Park did not adopt the recommendations of the city planning commission by ordinance. Therefore, it cannot be said the governing body of the city of Overland Park is obligated under the statute by the "master city plan."

Furthermore, it cannot be said that the denial of a zoning application made by the appellees to the governing body of the city of Overland Park constitutes the adoption of an ordinance zoning the property in question in accordance with the master city plan. The master city plan did not distinguish apartment-multi-family areas as to R-3 or R-4 district classifications. It was not until the district court took action that the city was directed to grant the application. The plain intent of 12-708, *supra*, appears to be that it is the action of the governing body of a city in adopting an ordinance that is presumed to be reasonable if it conforms to the comprehensive land use plan.

The appellees assert the approval of rezoning on other property for apartment use "similarly situated is a proper factor for the

court to consider in determining the reasonableness of the city." They cite as authority *Barclay v. Mitchum,* 186 Kan. 463, 350 P. 2d 1109, for this proposition. Counsel for the appellant also relies upon the *Barclay* case for the proposition that if the property in question is rezoned under an R-4 garden apartment classification, it would open the door and require further R-4 zoning in the immediate area.

Recent zoning cases appealed to this court instituted under 12-712, *supra,* and 19-2913, *supra,* indicate that both the Bench and Bar of this state are attaching entirely too much significance to the decision in *Barclay v. Mitchum,* supra. (See, *Moyer v. Board of County Commissioners,* 197 Kan. 23, 29, 415 P. 2d 261.) In *Barclay* the board of city commissioners of Kansas City, in an action tried under the old code of civil procedure, failed to file a motion for a new trial, but appealed from the trial court's judgment and order holding that its action in denying the appellee's zoning application was unreasonable, and ordering the board to change the zoning on appellee's real property from "A" single-family district, to "E" apartment district. Under these circumstances the scope of appellate review was limited to the question whether the judgment was supported by the pleadings and the findings. Trial errors were not subject to review. There the trial court found that the board of city commissioners had seen fit to rezone residential property in the area so that apartment buildings could be built. The trial court specifically found under those circumstances that:

" '. . . the action of the City Commissioners in denying the similar request of Blanche Barclay was unreasonable and discriminatory. I can find no reasonable basis under the evidence by which the one ruling on one plot of ground and the other ruling on the other plot of ground can be reconciled. Rulings on similar facts, to be reasonable, must either be consistent or the facts must be distinguishable in some way. . . .' " (p. 465.)

In the *Barclay* opinion this court, in speaking of the appellee's application for rezoning, said:

". . . Her evidence supported her position that the failure to grant the change of zone would constitute unreasonable action by both the commission and board for the reason that it would create a situation of discrimination against her; would result in actual damage to her; would not result in damage to adjacent owners; would constitute failure of the board to assume its obligation in providing needed housing by virtue of the Gateway Redevelopment Authority and the zone change would not cause difficulty in school or sewer facilities or deprive adjoining property owners of free and uninterrupted use thereof." (p. 464.)

On all issues framed by the pleadings in that case the trial court found in favor of the appellee. Accordingly, the trial court's judgment ordering the property rezoned was upheld, the court saying:

"It is evident from a reading of the petition and the full and complete findings of fact of the trial court that they support its judgment." (p. 466.)

In the instant case evidence of other tracts of land zoned for apartment use was not pursued in sufficient detail to show similarity in all respects to the appellees' property, and it does not appear from the trial court's findings or conclusions that it gave consideration to this point. Indeed, had the trial court found discrimination on such ground, this court would have been obligated to hold the evidence deficient.

Upon the record here presented for review the appellees have failed, as a matter of law, to sustain their burden of proof on the material issues framed by the pleadings to establish that the action of the governing body of the city of Overland Park was unreasonable in denying their R-4 garden apartment zoning application. The appellees by their own admission refused to participate in a further study by the planning commission for R-3 garden apartment zoning, after the city council voted to refer the matter back to the planning commission for such study. (See, *Hiniger v. Judy,* 194 Kan. 155, 398 P. 2d 305; and *Schoof v. Byrd,* 197 Kan. 38, 415 P. 2d 384.) Under these circumstances they have no standing in court to claim that the city council should have granted R-3 garden apartment zoning. (See, *Arkenberg v. City of Topeka,* 197 Kan. 731, 421 P. 2d 213.)

Under all of the facts and circumstances presented by the record in this case, we hold, as a matter of law, the action of the governing body of the city of Overland Park in denying the R-4 garden apartment zoning application of the appellees was reasonable.

The judgment of the lower court is reversed.