No. 45,035

Dan Scherrer, Jr. and Mildred R. Nesselrode, *Appellees*, v. The Board of County Commissioners of Wyandotte County, Kansas, *Appellants*.

(441 P. 2d 901)

Opinion filed June 8, 1968.

*Robert J. Foster*, of Kansas City, argued the cause and was on the briefs for the appellants.

*Edward H. Powers*, of Kansas City, argued the cause and was on the briefs for the appellees.

The opinion of the court was delivered by

Hatcher, C.: This appeal challenges the propriety of a judgment of the district court which set aside an order of the Board of County Commissioners refusing a special permit for a mobile home park.

The plaintiff, Mildred R. Nesselrode, is the owner of a tract of land consisting of slightly more than 30 acres known as 7300 Swartz Road in Wyandotte County, Kansas. The tract is west of the town of Muncie which lies just west of the city of Kansas City, Kansas. It is bounded on the south by Highway 32 adjacent to an industrial district and the main line of the Union Pacific Railroad.

The plaintiff, Dan Scherrer, Jr., has an option to purchase the tract of land contingent upon obtaining a special permit for the construction, development and operation of a mobile home park. The area is presently zoned for single family dwellings. In Wyandotte County there is no separate zoning classification for mobile home parks and such projects are authorized in the form of special permits. The plaintiffs made application for such special permit which was referred to the planning commission of Wyandotte county. The planning commission recommended that the special permit be denied, giving as their reason—"We think the land should be preserved for single family residential development." The mat-

ter was then heard by the county commissioners who denied the application without giving a reason.

This action followed, the petition alleging unreasonable, arbitrary and capricious conduct and requesting relief under K. S. A. 1967 Supp. 19-2926 which provides:

"Any and all acts and regulations provided for or authorized by this act shall be reasonable and any person having an interest in property affected may have the reasonableness of any such act or regulation determined by bringing an action against the county commissioners in the district court of the county."

The matter was tried before the district court which made comprehensive findings and concluded that the denial of the application was unreasonable. The defendant, the Board of County Commissioners, has appealed.

Both parties, and the trial judge in particular, appear to be well versed as to the rules of this court governing the power and authority of a district court on review of the reasonableness of an act of an administrative body.

Both parties call our attention to *Moyer v. Board of County Commissioners,* 197 Kan. 23, 415 P. 2d 261, where we state at page 29:

"The courts must be ever mindful of their limitations in reviewing discretionary orders of administrative bodies. It must be understood that the Board of County Commissioners had the right to prescribe zoning, the right to change zoning and the right to refuse to change zoning. The power of the courts is limited to determining the reasonableness of the action taken by the Board. The court should not substitute its judgment for that of the Board and should not declare its action unreasonable unless clearly compelled to do so by the evidence. (*Rich v. City of Wichita,* 189 Kan. 323, 369 P. 2d 378.) There is a presumption that the Board acted fairly, reasonably and its act was not discriminatory. It is incumbent upon those attacking the action to show wherein the Board's action was unreasonable. (*Konitz v. Board of County Commissioners,* 180 Kan. 230, 236, 303 P. 2d 180.)"

We also call attention to cases stating a similar rule brought under K. S. A. 12-712 to determine the reasonableness of administrative acts of governing bodies of cities. (*Arkenberg v. City of Topeka,* 197 Kan. 731, 421 P. 2d 213; *Bodine v. City of Overland Park,* 198 Kan. 371, 424 P. 2d 513.)

The trial court made findings of fact which supported its conclusion of unreasonableness. The only controversial issue we have before us is whether the evidence supports the trial court's findings.

The trial court's findings of fact and evidence to support them will be summarized.

An increasing percentage of today's population live in mobile

homes and balanced planning requires that communities designate and set aside areas for mobile home courts. Wyandotte county has failed to plan for mobile home areas and one must seek permission for a mobile court area by special permit.

Years ago the land in question was farmed but it can no longer be farmed profitably. It has not served a useful purpose for 15 years and there has not been a request to purchase the land for single family dwellings, the only purpose for which it is now zoned. It is of doubtful value for residential development because of its proximity to industry and a railroad. The testimony showed:

"That 32 Highway adjoins a portion of this land at the South. At the Southwest is the Peck-Wolf Sand Company. To the East and along said Highway is the Griffin Wheel Works, the Co-op Grain Elevators and the Wyandotte Township Sewage Treatment Plant. On Swartz Road which adjoins this property at the South and West is situated the buildings for the Westside Asphalt Company and a wholesale beer distributor. That adjacent to the Highway and between the Highway and the industrial section mentioned is situated the main line of the Union Pacific Railroad. That from the Southeast corner of the subject property to the railroad tracks themselves, not the right-of-way, is a distance of 263 feet; that 58 railroad trains pass that point every 24 hours."

The land is also of doubtful value for family dwellings because of the terrain. The testimony showed:

"That the terrain of the land is hilly with as much as sixty feet (60') difference in elevation from the low point to the high point as shown by topography; that Mill Creek runs across the North and Northeast section of the land and is surrounded by a rough wooded area; the flow-line elevation of the creek to the portion of the property concerned adjoining it there is a fifty foot (50') difference in elevation. That there is a tremendously hilly area with the creek forming a draw at the North and the Northeast portion of the land; that this creek with its draw circumscribes the North and East boundary of the property. That in addition, the creek circumscribes the property from the East to the West at the North end thereof. That there likewise is a deep ravine going across the North side of the property. . . ."

The court found that the most advantageous use to which the land can be put is for a mobile home court and to deny its use for this purpose would result in financial loss to its owner. The overwhelming testimony was that this was about the only use to which the land could be put in the prospective future. There was testimony that it might someday be used for light industry but this use was doubtful because there was a four lane highway between the land and the railroad.

The trial court further found that a well operated three or four

star mobile home will not adversely affect the value of the surrounding residential property and that—

"The terrain is such that few of the surrounding residential properties would even know that there was a mobile home court on the Nesselrode property. This topographical feature is much more apparent from a personal inspection of the site than it is from any of the exhibits introduced in evidence."

The trial court made a personal inspection of the site with the consent of the parties.

An expert on land uses and values, whose qualifications were admitted, testified:

". . . that the conduct of the Board of County Commissioners in refusing to grant the special permit for the development of a mobile home court was unreasonable because the best usage of the land would be for a mobile home park; that other uses could only be light industrial. Heavy industry would be difficult because it could not be served by a railroad. That the land was not feasible for single-family development because it was close to the railroad track, with a four lane highway immediately in front of the property; a very deep creek on one side and a commercial or industrial development on the other side. That the property was really facing industrial or commercial development on three sides thereof. The mobile home park would not depreciate the value of single-family residences and certainly not the commercial or industrial operations; that in this instance, any surrounding single-family residence would not even know that this project was in existence unless they would drive around to the opposite side of the hill and see it."

The chairman of the Planning Board of Wyandotte County testified that the application called for a departure from the present use of the land which was for single family dwellings. He further testified:

". . . That in their master plan they have designated the whole river area clear from the City limits to Bonner Springs for industrial and railroad, south of 32 Highway; *but that they wanted the area north of 32 Highway to be developed residentially.* . . ." (Emphasis supplied.)

He further testified that where mobile home courts were to be located was not the planning board's problem but they must be kept out of areas where they might discourage planned development.

The trial court was justified in concluding:

"The announced intent of the county planners to permit only single-family dwellings North of 32 Highway in the Muncie area is not realistic—it can only result in various tracts of ground, including the Nesselrode tract, remaining undeveloped."

An examination of the entire record justifies the conclusion that those in charge of zoning intended holding the land in the area

west of Muncie and north of Highway 32 to residential use only and if the land is not fitted for that purpose to force it to remain idle. We must conclude that this is approaching confiscation and that there was ample evidence to support the trial court's judgment that the refusal of the special permit was unreasonable.

The judgment is affirmed.

APPROVED BY THE COURT.