No. 47,205

GASLIGHT VILLA, INC., *Appellee* and *Cross-Appellant,* v. GOVERNING
BODY, CITY OF LANSING, KANSAS, a municipal corporation, *Appel-
lant* and *Cross-Appellee.*

(518 P. 2d 410)

Opinion filed January 26, 1974.

*Joseph N. Vader,* of Hackler, Londerholm, Speer, Vader & Austin, of Olathe, argued the cause, and *Robert C. Londerholm, Randolph G. Austin* and *D. Michael Case,* of the same firm, were with him on the brief for the appellant and cross-appellee.

*John C. Tillotson,* of Murray & Tillotson, Chartered, of Leavenworth, argued the cause and was on the brief for the appellee and cross-appellant.

The opinion of the court was delivered by

FROMME, J.: This involves a controversy over refusal of the city to issue a "special permit". The governing body of the city of Lansing, Kansas, appeals from an order of the district court of Leavenworth County, Kansas, directing the city to approve an application for "special permit" to construct and operate a mobile home park at a specified location in the city. The applicant, Gaslight Villa, Inc., cross-appeals from that portion of the district court's order denying attorney fees.

The question on the appeal concerns the reasonableness of the action of the city in denying the "special permit". The district court found the action of the governing body was unreasonable.

The action of the city was taken under authority of a city zoning ordinance which contains this provision:

"Section 8 District I (C)—Single Family Dwelling Mobile Homes. Single Mobile Homes and Single Trailers are Restricted to Establish Mobile Home Parks and Trailer Courts. Mobile Home Parks and Trailer Courts are prohibited in the City of Lansing, except by Special Permit and upon approval of the Lansing City Planning Commission."

It should be noted that a similar ordinance prohibiting or limiting the location of mobile homes within the limits of a city was upheld against constitutional attack based upon the arbitrariness and unreasonableness of such an ordinance. See *City of Colby v. Hurtt,* 212 Kan. 113, 509 P. 2d 1142. In *Hurtt* it is said:

"Mobile homes are used for residences but they possess special characteristics which warrant their separate regulation. They involve potential hazards to public health if not properly located and supplied with utilities and sanitary facilities. Mobile homes scattered promiscuously throughout the residential district of a city might well stunt its growth and certainly stifle development of an area for residential purposes.

"A careful study of the record convinces this court that the appellant has failed to produce any evidence which tends to show the ordinance was not

enacted to promote the health and general welfare of the citizens of the city, conserve the value of property, and encourage the most appropriate use of land." (p. 116.)

However, the main attack in the present case was not launched against the constitutionality or the lawfulness of the ordinance. It was launched against the alleged unreasonable action of the city governing body in refusing to issue the "special permit" under the authority of the ordinance. The action was filed pursuant to K. S. A. 12-712 which reads:

"That any ordinance or regulation provided for or authorized by this act shall be reasonable, and any taxpayer or any other person having an interest in property affected, may have the reasonableness of any ordinance or regulation determined by bringing an action, in the district court of the county in which such city is situated, against the governing body of said city."

In *Creten v. Board of County Commissioners*, 204 Kan. 782, 466 P. 2d 263, this court said:

"This is not strictly an action to secure 'rezoning' of a tract of land. The Wyandotte County zoning regulations adopted by the board of county commissioners have a provision that requires a 'special permit' for the operation of an auto truck park, junk yard or a 'mobile home park.' While this case involves only the issuance of the 'special permit' and not the rezoning of land, the same rules of law apply in reviewing the administrative proceeding. ( See K. S. A. 19-2901, *et seq.*; and *Scherrer v. Board of County Commissioners*, 201 Kan. 424, 441 P. 2d 901.)" (p. 783.)

When engaged in issuing or denying "special permits" for the location of mobile home parks under authority of a zoning ordinance a city governing body sits as an administrative body. (*Bodine v. City of Overland Park*, 198 Kan. 371, 424 P. 2d 513; *Creten v. Board of County Commissioners*, supra.)

What test of reasonableness was contemplated in K. S. A. 12-712? In attempting to explain what constitutes unreasonable action as that term is used in the statute this court said in *Coughlin v. City of Topeka*, 206 Kan. 552, 480 P. 2d 91:

"In determining reasonableness or lack of it in zoning cases our court has indicated that action which is capricious, arbitrary or oppressive is unreasonable in the sense that term is used in K. S. A. 12-712. When the action of the city governing body in rezoning an established residential area is taken without regard to the benefit or harm involved to the community at large and is so wide of the mark as to be outside the realm of fair debate the action of the governing body and the ordinance are unreasonable." (p. 553.)

In the recent case of *Hukle v. City of Kansas City*, 212 Kan. 627, 512 P. 2d 457, this court holds:

"The governing body of a city has the right to prescribe zoning, the right to change zoning and the right to refuse to change zoning. The power of the reviewing court is limited to determining (1) the lawfulness of the action taken, that is whether procedures in conformity with law were employed, and (2) the reasonableness of such action. As to the second, the court may not substitute its judgment for that of the governing body and should not declare the action of the latter unreasonable unless clearly compelled to do so by the evidence. There is a presumption that the governing body acted reasonably and it is incumbent upon those attacking its action to show the unreasonableness thereof." (Syl. ¶ 7.)

Additional rules to be followed in reviewing the action of the administrative body were declared in *Hukle* as follows:

"A district court may not, on appeal, substitute its judgment for that of an administrative tribunal, but is restricted to considering whether, as a matter of law, (1) the tribunal acted fraudulently, arbitrarily or capriciously, (2) the administrative order is substantially supported by evidence, and (3) the tribunal's action was within the scope of its authority. In reviewing a district court's judgment, as above, this court will, in the first instance, for the purpose of determining whether the district court observed the requirements and restrictions placed upon it, make the same review of the administrative tribunal's action as does the district court.

"Prevention of undue population concentration in a given area is a factor to be considered in changing zoning classification.

"Where the rezoning decision before the zoning authority is fairly debatable a reviewing court may not substitute its judgment for that of the zoning authority in order to change the decision on the debate.

"Highest and best use of a particular tract of land is only one of the criteria to be considered in determining zoning classification." (Syl. ¶¶ 8, 9, 10 and 11.)

From the foregoing certain principles of law emerge. The review proceedings authorized by K. S. A. 12-712 relate to actions of an administrative body and the statutory issue to be determined is the reasonableness of the ordinance or of the action of said body under the ordinance or regulation. The mark of unreasonable action as contemplated in K. S. A. 12-712 is when the action is so arbitrary it can be said it was taken without regard to the benefit or harm involved to the community at large including all interested parties and was so wide of the mark its unreasonableness lies outside the realm of fair debate. There is a presumption that the governing body acted reasonably and it is incumbent upon those attacking its action to show unreasonableness. The reviewing court may not substitute its judgment for that of the governing body and should not declare the action of the latter unreasonable unless clearly compelled to do so by the evidence. In reviewing a district court's

decision this court will, in the first instance, for the purpose of determining whether the district court observed the requirements and restrictions placed upon it, make the same review of the administrative tribunal's action as does the district court. The prevention of undue population concentration in a given area is a factor to be considered in authorizing the location and construction of any type of housing. Highest and best use of a particular tract of land is only one of the criteria to be considered in determining the advisability of issuing a special permit to locate and construct a mobile home park.

With the foregoing rules in mind we turn to the facts of our present case. In 1970 Gaslight Villa obtained a building permit from the city and thereafter constructed a mobile home park on a 10 acre tract in an area zoned for light industry within the city limits. The zoning ordinance in effect at the time permitted mobile home parks in light industry zones when approved by the city planning commission.

Thereafter the city amended its ordinance so as to prohibit location of mobile home parks except by special permit. It appears that the city of Lansing has a population of approximately 3,000 and has eight mobile home parks located within the city. The city planning commission and the governing body of the city only after deliberation and expressing concern over the nature of the growth of the city amended the zoning ordinances.

After the change in the ordinance Gaslight Villa applied for the "special permit" to construct an additional mobile home park to be located adjacent to the mobile home park previously constructed on the 10 acre tract. The new tract contains 11 acres, is zoned for light industry and is the one in question. The tract had never been developed and had been used for farming. It was platted in 1891. The property lies directly north of the Kansas State Penitentiary, immediately west of two lagoons which serve as the sewage treatment facility for the entire city of Lansing and west of railroad tracks, a blacksmith shop and a propane storage business.

When the application for special permit was filed with the city on March 9, 1972, it was referred to the planning commission for consideration. The planning commission considered the application and submitted to the city the following findings:

"To Mayor Hays and the City Council:
Per Application of Fisher's Trailer Park, The Planning Commission's findings are as follows:

"Traffic Conditions:

We feel that there is now a problem with traffic flow in the present lot, and addition of trailers would of course increase the condition. The park has one main entrance to Main street. We feel this is a definite traffic hazard.

"Lagoon Odors:

Since the park is located so close to the lagoons, it may create problems. On occasions odors do arise from the lagoons.

"Numbers of Trailers in area:

Lansing now has more trailers in its City Limits than any other City in Leavenworth County. We feel that the tax structor per trailer will not help pay for the needed schools in the future, compared to normal type homes. Trailer homes are reduced to 25% of their original value in a 5 year period.

"For the above reasons, the Commission does not approve of this application at this time."

After several preliminary discussions the final action of the city council in denying the permit was recorded in the minutes of the regular meeting of the council on April 13, 1972, as follows:

"Attorney John Tillotson [for Gaslight Villa] approached the Council and gave a report on the Changes in the Expansion, or Phase 2, which is to consist of 90 units. A discussion followed between [the city] Attorney Beall and Attorney Tillotson on taxes and the assessed value of trailers. Tillotson stated the Planning Commission's findings were not sufficient reasons for denying the permit. Mayor Hays asked Charles Fisher [applicant for special permit] when he was going to finish the recreation area in the present park. Mr. Fisher stated it is completed. Mayor Hays asked where the playground equipment was and Mr. Fisher stated he had never planned for playground equipment and had provided 1½ acres of dirt for the kids to play in. Mayor Hays then recommended the Council follow the Planning Commission's recommendations of denial. Councilman Kendall moved to accept the report on denial of application for the permit as recommended by the Planning Commission. It was Seconded by Councilman Miller and a roll call vote was unanimous. Attorney Tillotson asked Mayor Hays for a copy of the Planning Commission's findings. The Clerk was directed to see Mr. Tillotson receive a copy of the report."

Thereafter the present action was filed under K. S. A. 12-712 to determine the "reasonableness" of the city council's action in denying the permit. The district court heard the testimony of at least ten witnesses on the statutory issue and made lengthy findings of fact and conclusions of law. It is not necessary for us to set forth these findings at length. Suffice it to say the court recited the facts leading up to a denial of the "special permit". It reviewed the facts in evidence relating to the physical location of the tract, the sewage lagoon, the penitentiary, the railroad tracks, blacksmith shop, propane storage business and other environmental factors. The court noted that the tract lacked accessibility and that present streets in

the neighborhood were not improved except for a gravel surface. The court found the tract was not suitable for conventional residential development but found the highest and best use of the property was for development as a mobile home park.

In disposing of the city's concern with the increased hazard from traffic which might result from permitting the additional mobile home park, the court said:

". . . A careful reading of the findings of the commission reveals that their concern is with the traffic flow within the present lot and the additional burden of the increase of trailers that the new park would entail. It is the main entrance to the only available street to the west that is the traffic hazard with which the Commission was concerned. It appears from the exhibits that the existing park has one entrance and exit and that the proposed addition would have one entrance and exit to the same street with an additional entrance and exit to the street on the east. While the building of the addition with 90 trailers would obviously increase the traffic on the existing street to the west, the Court has difficulty in finding that it would create a traffic hazard as such."

In disposing of the city's concern over the undesirability of the location for residential units by reason of the sewage lagoon the court said:

"With respect to the odors from the adjacent sewage lagoon, the Court finds that the city has been experiencing some difficulty with odors from these lagoons for some time and has expended money in trying to rectify these difficulties. It is further found that these lagoons require ventilation and that some of the difficulty is occasioned by the failure of the city to keep the grass and weeds adjacent to the lagoons mowed to a satisfactory height. The existing lagoons are sufficient in size to accomodate the additional burden of the additional sewage created by additional mobile homes. The problem that exists in connection with the lagoons is going to have to be conquered whether this park is built or is not built. While the odors that will occasionally come from these lagoons is distressing to adjacent residents, it is not dangerous. This is simply a matter that will militate against the occupancy of the park when completed. If what the Planning Commission had in mind was that the problems that would be created would be complaints from occupants, they are correct."

The court further found that all mobile home park spaces existing in the city of Lansing were occupied and concluded:

"[5] The challenge of the plaintiff against Section 8 of Ordinance 32 of the City of Lansing cannot be sustained, nor were the defendant's actions taken pursuant to said section as such unlawful as the procedures followed were in substantial compliance with the requirements of such section. The denial of the requested special permit in this instance had the practical effect of barring persons of median and low income from establishing residency within the City of Lansing, Kansas."

"6. In considering the reasonableness of the action taken by the defendant under Ordinance 32, Section 8, the Court concludes that the reasons stated and

relied upon by the defendant for denial of Special Permit are unsubstantial and based upon erroneous information to the extent as to be unreasonable. Under the entire facts and circumstances of this case as herein found, the action of the governing body in denying plaintiff's application for Special Permit is hereby set aside, and the defendant is hereby ordered to issue a permit to the plaintiff for construction of the expansion of the mobile home park in strict accord with the plans and specifications submitted with plaintiff's application. The issuance of said Special Permit is to be contingent upon plaintiff's proper execution and filing with defendant a satisfactory bond as required by Ordinance No. 73 and acceptable to defendant."

As stated in *Hukle* this court, in reviewing a district court's judgment in an action under K. S. A. 12-712, will in the first instance make the same review of the administrative tribunal's action as does the district court for the purpose of determining whether the district court observed the requirements and restrictions placed upon such a review. These restrictions are set forth in the following cases: *Arkenberg v. City of Topeka*, 197 Kan. 731, 421 P. 2d 213; *Moyer v. Board of County Commissioners*, 197 Kan. 23, 415 P. 2d 261; *Scherrer v. Board of County Commissioners*, 201 Kan. 424, 441 P. 2d 901; *Keeney v. City of Overland Park*, 203 Kan. 389, 454 P. 2d 456; *Bodine v. City of Overland Park*, supra; *Creten v. Board of County Commissioners*, supra; *Coughlin v. City of Topeka*, supra.

In order to determine whether there was sufficient evidence before the Planning Commission and the governing body at the time the decision was made to deny the application it will be necessary to review some of the testimony presented at the trial.

Ben Boyer, the administrator for the City-County Health Department and supervisor of Environmental Health, testified he was familiar with the area, including the sewage lagoons adjacent to the proposed area and he had been to the site approximately 25 to 30 times over a period of years and probably 8 to 10 times in the past 6 months. He further testified that he was concerned about drainage problems in the area to be rezoned, and explained that this is a low area near the junction of two creeks and that the creeks cannot carry a rapid run-off of water from the highway. He mentioned the flooding of back yards and basements in the area. He stated that only ⅙ of the 11 acres in question rises enough to be out of this flood area. He further testified that new landscaping, paved roads, and the added area of roofing will cause an additional collection of storm water into the waterway which is not adequate to take care of the existing problem. Further, in response to a question from the city attorney as to whether he as a health officer would recommend

the establishment of a mobile home court on the 11 acres in question, he answered, "I would have to say no."

A review of Plaintiff's Exhibit 25, which contains the minutes of various meetings of the planning commission during 1971 and early 1972, does disclose considerable discussion of the existing problems with mobile home courts and the concern of the planning commission that the community of Lansing was becoming saturated with mobile home parks in comparison to the city's population. The minutes of the planning commission meeting on the 15th day of September, 1971, indicates that the planning commission was not prohibiting mobile home parks in the city. Eight existed in the city at that time. The commission did conclude, however, it was necessary to control the future establishment of mobile home parks. In the minutes of September 23, 1971, the topic discussed was the removal of mobile home parks in certain areas and some provision for limiting the location of mobile homes to specified areas within the city limits of Lansing, Kansas.

The witness Robert J. Hrabak was the Regional Planning Director for Leavenworth County. One of his duties was to work with all small cities in the county to advise them on rezoning requests. He attended most of the Lansing City Planning Commission meetings and advised the commission on the special permit application in question.

Hrabak testified:

"I have an opinion as Regional Planner of Leavenworth County as to the usability of this land or the propriety of using this land for a projected 11 acre mobile home court expansion. My feeling is that it could go residential but its not the most desirable use. The lagoon is not in environment residential character. It is not the kind of place where most people should go and live. The lay of the land is that it is difficult to get in and out of, and the traffic circulation is very poor and would be a much more desirable area for other than residential use because of kinds of conditions that exist there. I have studied this area in the City of Lansing since the request was made. I am familiar with the terrain that is involved. I believe it should be in industrial type use. It would be something that would be of a general heavier use than your normal commercial service type areas—plumbing shops or light storage.

"This area would be problems in there even for light industrial, but it would be better suited for light industrial because you wouldn't have to take care of the environmental deficiencies that residential property would have. In my opinion it should not be developed residentially. In my opinion a mobile home court is residential."

With respect to the traffic hazard that the planning commission found as one of its reasons for recommending denial of the applica-

tion, Mr. Hrabak further testified, "the traffic circulation in the proposed area of rezoning was very poor, that the streets were narrow and dirt and an increase in traffic on those streets would require more maintenance and more problems for the City at large." He further testified that the land in question should not be used for residential purposes.

Mr. Hrabak stated he was a geologist by education. In response to evidence at the trial that this land was not suitable for light industry because it had some abandoned coal mines underneath it, Mr. Hrabak testified the shafts would not be a problem to the use of this land for light industry.

In Finding of Fact No. 6 the court stated that the proposal of the plaintiff to use the tract in question for expansion of a mobile home park was in conformity with the proposed land use plan for the city of Lansing. The record discloses this proposed land use plan was never adopted by ordinance of the city of Lansing. In accordance with *Bodine v. City of Overland Park,* supra, the governing body of a city is not obligated to zone property in accordance with a "master city plan", if said plan is not adopted as an ordinance.

The court stated in Finding of Fact No. 6 that the tract in question had very little utility for development of single family dwellings because of its location immediately below the Kansas State Penitentiary, its location next to the lagoon, the existing mobile home park, the Atchison, Topeka and Santa Fe Railroad, a blacksmith shop and a propane storage business.

The way mobile homes are generally constructed and located today they are single family dwellings and in many respects may be more attractive than some single family developments of a non-mobile character. When the trial court found that the property in question was not suitable for conventional residential development it might be questionable whether it should find its best use was for a mobile home park. Mobile homes of today when permanently located in mobile home parks take on much of the character of residential single family dwellings.

This case is very similar to the *Creten* case. In *Creten* the planning board of Wyandotte County recommended a special permit for the mobile home park be granted but the board of county commissioners denied the request. The trial court found the action of the board of county commissioners in denying the special permit to be reasonable and this court affirmed. The tract of land in the *Creten* case was next to a railroad and next to a chemical plant lagoon

which would be a hazard and a nuisance. In the city of Lansing the proposed mobile home park would be adjacent to a railroad, a propane storage company, and the two sewage treatment lagoons. In both cases the land being considered is so low as to be subject to overflow of storm water.

A review of the court's findings of fact and conclusions of law in the present case indicates that one of the compelling reasons for the trial judge's ruling of unreasonableness was that he felt the denial of the requested special permit had the practical effect of barring persons of median and low income from establishing residency in the city of Lansing, Kansas. A careful search of the record reveals absolutely no evidence to support this conclusion other than testimony that existing mobile home parks were filled. In denying the present permit the city merely exercised its lawful right to determine land use and zoning in specific areas in the community. The denial of this permit would in no way affect other applications for special permits for mobile home parks in other areas within the city limits.

After reviewing the action of the city governing body in light of all the evidence introduced in the district court we are convinced the question of reasonableness of the decision of the city governing body in denying the special permit for constructing an additional 90 unit mobile home park at this location was at most fairly debatable. We cannot say the action was taken in disregard to the benefit or harm involved to the community at large or that it was so wide of the mark as to be outside the realm of fair debate. Accordingly we hold the trial court did substitute its judgment for that of the zoning authority in order to change the ultimate decision on matters of fair debate between the zoning authority and the applicant for special permit.

We turn to the cross-appeal which was taken from the order disallowing attorney fees. Gaslight Villa as cross-appellant states, "The statutory basis for the request of attorneys fees is that this is a mandamus action with the provisions of K. S. A. 60-802 (c). . . ."

We do not agree. The action is not one in mandamus. Mandamus is a proceeding to compel some inferior court, tribunal, board, corporation or person to perform a specified duty, which duty results from the office, trust or official station of the party to whom the order is to be directed. (K. S. A. 60-801.) The remedy of mandamus is available for the purpose of compelling the performance of a clearly defined official duty. Its purpose is to compel the perform-

ance of an act which the law specifically enjoins as a duty resulting from the office or trust. This remedy may not be invoked to control discretion, or to enforce a right which is in substantial dispute. (*Curless v. Board of County Commissioners,* 197 Kan. 580, 419 P. 2d 876; *Lauber v. Firemen's Relief Assn. of Salina,* 195 Kan. 126, 402 P. 2d 817.)

The present action is one for review of the discretionary action of the city governing body pursuant to K. S. A. 12-712. There is no provision in this statute which authorizes the allowance of attorney fees. It is generally recognized in this state that attorney fees are not allowed in the absence of statutory authority or agreement. (*Evans v. Insurance Co.,* 87 Kan. 641, 125 Pac. 86; *Schwartz v. Western Power & Gas Co., Inc.,* 208 Kan. 844, 847, 494 P. 2d 1113.)

Accordingly the judgment is reversed on appeal and affirmed on cross-appeal.