# THE SUPREME COURT

### OF THE

# STATE OF KANSAS,

DURING THE TERM COMMENCING JANUARY, 1863.

1 273
40 474
1 273
41 6
1 273
55 9
1 273
e70 455
1 273
80 231

ABIJAH J. JONES *vs.* THE STATE OF KANSAS *ex. rel.* F. A. ATHERBY and B. L. KINGSBURY, and

THE STATE OF KANSAS *ex. rel.* JOHN B. SCOTT and A. F. WILKINSON *vs.* MATTHEW FENNIMORE, Judge, &c., *et al. respondents.*

These causes involve the same questions.

The provisions of section four of chapter twenty of the laws of 1861, requiring the commissioners to proclaim the result of the first, and the time for the second election, " *as herein provided,*" refers to the proclamation mentioned in the third section of the same act, and requires the proclamation, provided for in section four, to be written or printed, and posted in two places in each township of the county.

Unless a fair consideration of a statute, directing the mode of proceeding of public officers, shows that the legislature intended compliance with the provision in relation thereto to be essential to the validity of the proceeding, it is to be regarded as directory merely.

In statutes of this class, as well as all others, the will of the legislature, expressed in the statute, is the law, and is to be ascertained by all legitimate methods of interpretation.

The provision in section four of chapter twenty of the laws of 1861, for proclaiming the result of the first, and the time of the second election, was a prerequisite to the taking of the second vote. The act confers no authority to take that vote witout first making the proclamation.

In the case of *Jones vs. The State ex. rel. Kingsbury et al.,* a sworn petition to the judge of the district court for the

18

county of Coffey, showed that the relators were citizens and property holders of Burlington, in said county, where the county seat had been located by act of the legislature of 1858; that Jones was clerk of the district court for said county, who refused to hold his office at said town, but held the same at Leroy, claiming to act under the act providing for an election for the location of the county seat, approved April 30th, 1861; that two elections were held, at the first of which no place having received a majority of all the votes cast, a second election was held, without the commissioners of said county having issued a proclamation of the result of the first. At this election Leroy received a majority of all the votes cast. The proper notice of an application, under this petition, for a writ of mandamus was served on Jones. The facts substantially were agreed on by the respondent.

It was ordered by the court below that a mandamus issue to the said Jones, commanding him to remove forthwith his said office, with the books, papers, records and furniture belonging thereto to the said town of Burlington.

The respondent Jones excepted to the decision and brought the case to the supreme court.

In the case *The State ex. rel. John B. Scott ei al. vs. Mathew Fennimore et al.*, the relators, citizens of said county, on a petition setting forth substantially similar facts contained in the petition in the other case, applied directly for a writ of mandamus against the respondents—district and county officers holding their offices at Burlington—commanding them to remove their offices respectively, to Leroy.

The two cases, involving the same facts and principles of law, coming on to be heard at the same time were considered together by the court.

*W. P. Gambell,* for Abijah J. Jones, plaintiff in error, submitted:

The only objection made to the validity of the election is that the proclamation of the result of the first election and

notice of the second election were not made and posted up, as by law required. It is admitted that the elections were held, and that the people of the county voted; and it is not alleged that any portion of the voters in the county failed in knowledge of the pendency of the question, or to exercise the elective franchise.

The elections having been held at the proper time, the people cannot be deprived of their voice by these omissions of the county board. At the most, the provisions of the statutes in this regard are directory. (*See Laws* 1861, 117; *Smith's Commentaries,* 782 *to* 793; *Pond vs. Argus,* 3 *Mass.,* 232; *People vs. Allen,* 6 *Wend.,* 486; 6 *Wend.,* 604; *Marchant vs. Langworthy,* 6 *Hill,* 646; *Amer. Law Mag.,* 369; *People vs. Cook,* 14 *Barb.,* 261, 290; *People vs. Peck,* 11 *Wend.,* 604; 2 *Carter, Ind.,* 423; *Clifton vs. Cook,* 7 *Ala.,* 114; *Same Case,* 5 *U. S. Digest,* 922; *People vs. Kunkle,* 9 *Johns.,* 147; 3 *Cal.,* 477; *Dishon vs. Smith,* 10 *Iowa,* 212; *State ex. rel. Spaulding vs. Elwood,* 12 *Wis.,* 551; *People vs. Davies,* 3 *Kernan,* 351.)

But the election having been held, the proper proceeding on the part of the relators in this case was to contest the election.

*Wilson Shannon,* for defendants in error.

It is made the duty of the commissioners, after having canvassed the votes given at the first election, and having ascertained that no place had received a majority of all the votes cast, to proclaim the same, and also the time of the second election; and the canvass of the second election and proclamation of the result shall be the same as at the first. No proclamation of the result of the first election was ever made by the commissioners in this case, and no time for the second election was ever appointed and proclaimed.

The object of the legislature in requiring this was to give to the people of Coffey county a fair opportunity of express-

ing their will as to the permanent location of the county seat. It was an important question to the people of the county, and the result of the vote was intended by the legislature to be final as to the permanent location of the county seat.

By the holding back of the proclamation required by the statute, on the part of the commissioners, the object of a fair election was defeated. This court is now called upon to sanction this management. This is not the first fraudulent election we have had in Kansas; but I believe it is the first time the judicial tribunals of the country have been called upon to give their sanction to a fraudulent election.

The whole question depends upon the construction of the statute—the express intent of the legislature. Has the *intent* of the legislature been carried out by the commissioners in the second election, or has it been grossly violated and disregarded? If the latter, then the second election should be treated as a nullity, and if treated as a nullity, the county seat of Coffey county has never been removed from Burlington, and the county officers are bound to keep their offices at the county seat.

This statute is an affirmative statute and not merely directory. Its language is imperative. The rule on this subject is this: "That if an affirmative statute, which is introductive of a new law, direct a thing to be done in a certain manner, that thing shall not be done in any other manner, although there are no negative words in the statute." (*Smith's Com.,* p. 778, § 667.)

Again, the rule is laid down: "Where certain acts required to be done are of the *essence* of the thing required to be done by the act, it is imperative." (*Smith's Commentaries,* §§ 679, 680; 1 *Burrow,* 447; 7 *Cranch R.,* 555; 8 *Peters R.,* 59⸱; 12 *Conn. R.,* 243.)

A naked statutory power must, in all cases, be strictly pursued. (*Smith's Com.,* § 676, *latter clause.*)

Jones *v.* The State of Kansas *ex. rel.* Atherby and Kingsbury.

Instances and illustrations of statutes directory may be found in *Smith's Commentaries*, (§§ 670 *to* 674;) 3 *Hill*, 42; 7 *Hill*, 9.)

From the above references the distinction between directory and imperative statutes may be seen, and the position clearly maintained that the statute in question is imperative, and must be followed.

By the Court, COBB, C. J.   These causes, submitted upon the same arguments and involving the same questions, will be considered together.

Section one of chapter twenty of the laws of 1861 provides for the holding of an election on the 2d day of June of that year, in the county of Coffey, for the permanent location of the seat of justice in that county, and that the place receiving a majority of all the votes cast shall be such seat of justice.

Section two of the same act provides that in case no place shall receive a majority of all the votes cast, a second election for such seat of justice shall be held on the Tuesday succeeding the first Monday in November following, at which said election the balloting shall be confined to the two places having the highest number of votes at the said first election.

Section three prescribes the manner of voting, and provides for the return of the poll-book and the number of votes each place received, to the clerk of such county within five days after the the election, and that the county commissioners shall canvass the votes, and the place having the majority of all the votes cast shall be proclaimed by them the permanent county seat of said county, either by written or printed proclamation, which shall be posted up in at least two places in each township.

Section four reads as follows :

" That if upon the canvassing of said votes by the said commissioners they shall find that no place has received a

majority of all the votes cast, it shall be their duty to proclaim the same, and also the time of the second election, as herein provided; and the canvass of the votes of the second election, and proclamation of the result shall be the same as at the first."

Pursuant to these provisions the first election was held, and no place had a majority of all the votes cast. But the commissioners failed to make proclamation of the result, and a second election was held at the time provided for in the law, at which election the town of Leroy received a majority of all the votes cast. And whether said last election is void for the want of such proclamation is the only question presented in these causes.

The provision of section four of the act referred to, requiring the commissioners to proclaim the result of the first, and the time for the second election, "*as herein provided*," clearly refers to the proclamation mentioned in the third section, and requires the proclamation provided for in section four to be written or printed and posted up in at least two places in every township of the county.

But it is claimed by counsel that the provision of the law requiring such proclamation is merely directory to the commissioners, and their failure to comply with it does not, therefore, affect the validity of the election.

The question, what statutory provisions are to be regarded as directory merely, has been the subject of much discussion, without establishing any rule of general application.

In the case of *The People vs. Cook*, (14 *Barb.*, 259,) cited on the argument, justice Mason, delivering the opinion of the court, cites a large number of cases in which various statutory provisions have been held to be merely directory, and he lays down as a rule "that statutes directing the mode of proceeding of public officers are directory, and are not to be regarded as essential to the validity of the proceedings of themselves, unless *it be so declared* in the statute."

And in a subsequent part of the same opinion he again says : " And we have already seen by reference to the adjudications, that statutes directing the mode of proceeding of public officers are regarded as directory, unless there is something in the statute itself which plainly shows a different intent."

The rule first mentioned appears to us inaccurate. The words, "unless it be so declared in the statute," seem to require an express declaration that the provision directing the manner is essential, however important and essential a just view of the policy of the statute may show such provisions to be.

The rule secondly stated contains probably all that the learned justice intended to say in the first, and as a general proposition, is doubless correct. But the intent to make such provision essential may appear as well by the general scope and policy of the statute as by direct averment.

In other words, unless a fair consideration of the statute shows that the legislature intended compliance with the provision in relation to the manner to be essential to the validity of the proceeding, it is to be regarded as directory merely.

In statutes of this class, as well as all others, the will of the legislature expressed in the statute is the law, and is to be ascertained by all legitimate methods of interpretation.

Is the provision for the proclamation, in section three of the act under consideration, upon these principles to be regarded as directory merely ?

This question is to be determined by the language and policy of the act. The law submits to the decision of the electors an important public question, affecting, not only the convenience of the people, but, to some extent, also, the value of a large portion of the property of the county.

The policy of the act was to get a full and fair vote of the electors upon that question ; and the provision for proclaiming the result of the first, and time of the second election,

was well adapted, by giving full and timely notice to the people, to secure that result.

It was also an important and necessary provision. Without it the law provided no means for informing the people that any second election was to be held for the location of the seat of justice, and many of them might, and some of them probably would, know nothing of it. A large share of the people have no access to the statutes, and necessarily know little of their contents, and might well be ignorant of the provision for a second election. Others, not being informed of the result of the first election, might suppose that the question was decided by the first vote, and therefore not appear at the second.

To obviate these difficulties, the legislature wisely provided for circulating the information by posting the proclamation in every town of the county. The provision was not only important, but the fact that the law imposed upon the commissioners the trouble of writing or printing and posting in each town two copies of the proclamation, shows that the legislature regarded it as important; that they did not insert it as a mere matter of convenience, but to protect the rights of the people.

We are satisfied, therefore, that the legislature intended the making and posting of the proclamation to be a prerequisite to the taking of the second vote, and that the act confers no authority to take the vote, without first making the proclamation.

A large number of cases were cited on the argument, in which statutory provisions have been held to be directory, but none of them that we have been able to see are in point in these causes, except, perhaps, *Dishon vs. Smith,* (10 *Iow r.* 212.)

*The People of the State of New York vs. John J. Schermerhorn,* (19 *Barb.,* 540,) is an authority the other way. The court saying, " statutory requisitions are deemed directory

only when they relate to some immaterial matter, where a compliance is a matter of convenience, rather than of sub-stance;" and we think the weight of authority is not inconsistent with the opinion already expressed.

The judgment of the district court in the case of *Jones vs. The State of Kansas* must be affirmed, and the application for a peremptory mandamus in *The State of Kansas vs. Fennimore et al.* must be denied.