No. 35,509

THE CITY OF HUTCHINSON, *Plaintiff*, v. FRANK J. RYAN, GEORGE L. McCLENNY and JAY S. PARKER, as the Kansas State Board of School Fund Commissioners, and GEORGE ROBB, as State Auditor, etc., *Defendants*.

(121 P. 2d 179)

Opinion filed January 24, 1942.

*J. Richards Hunter*, of Hutchinson, for the plaintiff.

*Jay S. Parker*, attorney general, *Eldon Wallingford*, assistant attorney general, for the defendants.

The opinion of the court was delivered by

THIELE, J.: This is an original proceeding in mandamus to compel ·the defendants to return to the plaintiff certain municipal bonds.

We note that in our constitution and statutes there is variance in designation of the defendant board. Article 6, section 9, of our constitution provides that the state superintendent of public instruction, secretary of state and attorney general shall constitute "a board of commissioners for the management and investment of the school funds." As all references hereafter made are to the General Statutes of 1935 we shall give citation of chapter and section only. Under chapter 75-2301 the latter part of the above is expanded to cover "management and investment of the permanent school, state normal school and state university funds." In chapter 75-2312 the title used is the "board of commissioners of the state permanent school fund"; in chapters 75-2316, 75-2317 and 75-2318, it is the "board of school-fund commissioners"; and in chapter 10-106 the name used is "state school fund commission." Whatever the title, reference is to the board provided in the constitution. We shall refer to the defendants as the commission and the state auditor.

The facts out of which the controversy arises are as follows: On November 14, 1941, the governing body of the plaintiff city enacted an ordinance providing for the issuance of its general bonds in the total amount of $70,900.64, the ordinance being published on November 19, 1941. The bonds were later executed and were transmitted to J. J. Haney, acting as the secretary of the commission, and were delivered to him at his office in Topeka on December 1, 1941, at 11:15 a. m. of that day. On that day the commission had a meeting but the bonds were not presented for consideration at that time. On · December 11, 1941, a representative of the plaintiff. city inquired about the bonds and a meeting of the commission was called for the next morning, and on December 12, 1941, the commission purchased the bonds, and notice thereof was given the city.

On November 13, 14 and 18, 1941, the city clerk had published a notice that bids for the purchase of the bonds would be received on November 28, 1941, and on that date the governing body determined that the Great American Life Insurance Company of Hutchinson, Kan., was the highest and best bidder, and authorized the sale of the bonds to it "subject always to the right of the state school fund commission to purchase said bonds at par and accrued interest." On

December 11, 1941, the insurance company made demand on the city for the bonds and tendered the amount of its bid, but was told the bonds had not been returned by the commission and that plaintiff had not received any notice that the commission desired to purchase the bonds. On December 15, 1941, the insurance company served a written notice on the city with reference to alleged breach of contract. We need not detail it.

On the theory that the commission, under section 10-106, had only ten days in which to purchase the bonds, failing which the city could sell to the highest bidder, the city commenced this action to compel the commission to return the bonds.

The question presented may be stated thus: Under section 10-106 and section 75-2312 the commission is given a prior right to purchase any issue of municipal bonds. If that right is not exercised by the commission within ten days after the bonds and transcript are received, as provided in section 10-106, is the prior right of the commission extinguished, or may it be exercised at some subsequent time? Plaintiff's contention is that the statute is mandatory and that the commission must exercise its right to purchase within ten days, and in substance that its failure to act within ten days leaves the city free to sell to other purchasers in accordance with statutory provisions, and that the city, having in this instance sold to other purchasers, is entitled to the return of the bonds.

To determine the soundness of plaintiff's contention, we examine not only the particular portion of sections of the statutes relied upon by it, but all of those sections, as well as other sections which provide not only powers and duties of the commission, but restrictions on sale by the city.

Plaintiff directs our attention to the first part of section 10-106, originally enacted in 1923, which provides that it is the duty of the officers having in charge the sale of municipal bonds to send to the commission a transcript of the proceedings preliminary to their issue, and—

". . . it shall be the duty of the state school fund commission within ten days after receiving such transcript to notify such officers in writing whether or not the state school fund commission desires to purchase the issue of bonds authorized by said transcript."

It is to be observed that the statute quoted specifies a ten-day period after receipt of the transcript in which the commission is to act, and plaintiff insists that under this statute, which is the latest

expression of the legislature, action within ten days is mandatory. The latter part of the above section is referred to later.

Plaintiff also directs our attention to section 75-2312, originally enacted in 1887, and which as now existing provides that municipal officers are directed to sell such bonds to the commission if it will pay par for the same. This section makes it unlawful for an officer to sell such bonds without having first offered them to the commission, and provides that any municipal officer who shall sell any such bonds to any other person at any price without having first given the commission an opportunity to purchase the same, shall be guilty of a misdemeanor, and upon conviction shall be punished by fine or imprisonment and shall forfeit his office.

In 1879 the legislature passed a comprehensive act dealing with the commission, its powers, duties, etc. It has been amended and supplemented from time to time, but not lately amended, and now appears as follows:

Section 75-2301 supplements the constitutional provision for the commission, provides who shall be chairman and secretary and that the commissioners when acting as such must act personally and cannot be represented by an assistant, etc. Section 75-2302 provides for regular meetings of the commission "on the last Saturday of the month at 10 o'clock a. m." and for special meetings to be held at any time at the call of any member. Section 75-2306, following out the constitutional requirement, provides for a quorum of two members, and then provides that the board (commission) shall not buy any school-district bond or bonds except at a legal session, nor unless every member is notified in time to be present at such meeting, and notified also that the question of purchasing such bonds is to be considered, the notice designating the bonds. Other provisions of the original act as amended need not be mentioned further than as follows. It is to be noted that in 1879 the commission had power only to invest in bonds of the state of Kansas, or of the United States and school district bonds of the several school districts of the state of Kansas (Laws 1879, ch. 166, sec. 117), and that when section 75-2306 was enacted there was no requirement that cities offer their bonds to the commission; that did not come until 1887 and then under conditions different than now prevail (Laws 1887, ch. 58). Possibly it may be open to argument whether the restriction of action in section 75-2306 applies to municipal bonds other than school-district

bonds, but the course of legislation shows that it might well do so. It does appear, however, that a statutory time for meeting of the commission is fixed, and if any matter is to be taken up at a special meeting (and the meeting on December 1, 1941, was not on the last Saturday of the month), under general principles of law, notice of the meeting and of the nature of the business to be transacted by the board at such meeting was necessary. (See by way of analogy: *P. & F. R. Rly. Co. v. Comm'rs of Anderson Co.*, 16 Kan. 302, and *Rogers v. Slonaker*, 32 Kan. 191, 4 Pac. 138, dealing with county boards and special meetings, and 43 C. J., pp. 499, 500, dealing with municipal corporations and special meetings.)

Attention is also directed to the latter part of section 10-106 heretofore mentioned. So far as here applicable, it provides that if the commission does not purchase the bonds offered by the municipality, the municipality may sell the bonds in one of two manners. The one here applicable provides the city must give at least ten days' notice by requisite newspaper publication setting out specified information concerning the bonds and the time and place where they will be sold. Purchasers are required to submit bids in writing accompanied by certified check for two percent of the bid. At the time and place specified the bids are opened and the bonds are sold to the best bidder. We pause here to say this statutory requirement was not observed in the instant case. The notices were given before the ordinance authorizing the issuance of the bonds was passed and necessarily before the transcript of the preliminary proceedings was furnished to the commission. Further, the authorization of sale to the insurance company was before the transcript was furnished, and shows on its face a sale subject to the right of the commission to purchase. As the issue presented is not the validity of this sale, but the right to have the bonds returned, we shall not discuss the question of sale to the insurance company.

In the briefs we find no citation of any decision of this court dealing with what legislation is mandatory and what is directory, and our research discloses but few cases where the analogy to the instant case is close.

In *Jones v. The State of Kansas, ex rel. Atherby and Kingsbury*, 1 Kan. 273, the question was whether provisions for giving notice of a county seat election were merely directory or were mandatory. In an opinion by Cobb, C. J., it was said, in part:

"The question, what statutory provisions are to be regarded as directory merely, has been the subject of much discussion, without establishing any rule of general application." (l. c. 278.)

and

"In other words, unless a fair consideration of the statute shows that the legislature intended compliance with the provision in relation to the manner to be essential to the validity of the proceeding, it is to be regarded as directory merely." (l. c. 279.)

In *Comm'rs of Shawnee County v. Carter,* 2 Kan. 115, involving validity of an issue of bonds, it was said that when statutes confer special ministerial authority, the exercise of which may affect the right of property and incur municipal liability, the authority must be strictly followed and material departure will vitiate the proceedings.

*Hooper v. McNaughton,* 113 Kan. 405, 214 Pac. 613, was an election contest case where there was nonobservance of certain requirements of the election laws. With respect to the character of those requirements, it was said:

"The distinction between mandatory and directory provisions of a statute lies in consequence of nonobservance. An act done in disobedience of a mandatory provision is void. While a directory provision should be obeyed, an act done in disobedience of it may still be valid. Even although the doing of an act contrary to a directory provision be punishable criminally, still the act itself may not be nugatory. Deviations from instructions contained in directory provisions are usually termed irregularities." (l. c. 407.)

As observed by Cobb, C. J., *supra,* the question of mandatory or directory provisions of legislation has been the subject of much discussion, and there have been a multitude of decisions since he made that observation. Without detailing decisions from other jurisdictions, we note the following text statements, which seem well established by the authorities.

In 25 R. C. L. 769, it is said:

"The question whether a duty imposed by statute on a public officer, the performance or nonperformance of which affects the rights of others, is mandatory or merely directory, is a very common, but often a very difficult one to decide. In general, statutory provisions directing the mode of proceeding by public officers and intended to secure order, system and dispatch in proceedings, and by a disregard of which the rights of parties cannot be injuriously affected, are not regarded as mandatory, unless accompanied by negative words importing that the acts required shall not be done in any other manner or time than that designated. . . ."

In 59 C. J. 1078, dealing with time for performance of duties by public officers, it is said:

"A statute specifying a time within which a public officer is to perform an official act regarding the rights and duties of others, and made with a view to the proper, orderly, and prompt conduct of business is usually directory, unless the phraseology of the statute, or the nature of the act to be performed and the consequences of doing or failing to do it at such time, is such that the designation of time must be considered a limitation on the power of the officer. So a statute requiring a public body, merely for the orderly transaction of business, to fix the time for the performance of certain acts which may as effectually be done at any other time is usually regarded as directory. . . ."

The statutes noted above dealing with the sale of bonds and the duties of the commission are *pari materia,* and one section cannot be read apart from other sections. When we take into consideration the fact the commission is composed of state officers, each of whom has many duties to perform, and that the legislature provided each member must act personally and not by an assistant or clerk, and fixed a statutory regular meeting, it is difficult for us to hold that a statement of time in an act fixing powers of a municipality with respect to sale of bonds, but containing a time limitation, is mandatory as to that limitation, and that if the commission does not exercise its right of purchase within ten days, its right is lost. Were we to hold as mandatory the provision as to time set forth in chapter 10-106, in effect we would say to the commission that whenever a transcript of proceedings preliminary to a municipal bond issue was received by its secretary over ten days before its statutory meeting, it must hold a special meeting and act on the transcript or lose its right to take the bonds. We think it requires much more specific legislation than now exists to warrant any such holding. In our judgment, the ten-day provision in the last mentioned statute is not mandatory, but is directory only.

Our conclusion makes it unnecessary to discuss other matters mentioned in the briefs.

The writ of mandamus applied for is denied.