No. 46,847

WARREN I. PAUL and BARBARA S. PAUL, *Appellants,* v. THE CITY OF MANHATTAN, A Municipal Corporation; THE MAYOR AND BOARD OF COMMISSIONERS OF MANHATTAN, KANSAS; and RILEY INVESTMENT CO., INC., *Appellees.*

(511 P. 2d 244)

Opinion filed June 9, 1973.

*Thomas Odell Rost,* of Topeka, argued the cause, and *Harlan W. Graham,* of Manhattan, was with him on the brief for the appellants.

*Edward Horne,* of Manhattan, argued the cause and was on the brief for appellees City of Manhattan and Board of Commissioners of Manhattan.

*Dan H. Myers,* of Manhattan, argued the cause and was on the brief for appellee Riley Investment Co., Inc.

The opinion of the court was delivered by

FOTH, C.: This case involves a challenge to the validity of an ordinance of the City of Manhattan rezoning "Cedar Crest," a 54-lot subdivision, from "R" single-family residential to "R-2" two-family residential. Plaintiffs, Mr. and Mrs. Warren I. Paul, are neighboring landowners and residents. They brought this action on behalf of themselves and other neighbors attacking both the procedure leading to the rezoning ordinance and its reasonableness. The ordinance was upheld by the trial court and plaintiffs have appealed.

The rezoning was requested by the developer, the defendant Riley Investment Co., Inc., through an application filed with the city planning board on July 10, 1970. That body held a public hearing on August 10, 1970, at the conclusion of which it voted unanimously to recommend the change. A number of area residents, including Mrs. Paul, spoke in opposition to the rezoning, and their comments appear in the minutes. Those minutes, reflecting the proceedings and the planning board's action, were forwarded by the planning board to the city commission.

The city commission, a five-member body, first considered the matter on August 18, 1970. At that time it reviewed the planning board minutes of August 10, answered questions of area residents who were present, and had the city attorney explain the procedure for filing a legal protest. No official action was taken at this meeting.

The city commisison again took up the matter on September 1, and conducted a one and one-half hour hearing at which plaintiffs were represented by counsel. They submitted, in addition to their oral presentation, a written, detailed and documented analysis of the Manhattan zoning picture and housing needs, demonstrating why they thought the rezoning should be denied. This document consumes some thirty-four pages of the record on appeal.

The September 1 hearing resulted in the commission's tabling the application; it lay on the table until the commission meeting of

September 15. On that day plaintiffs submitted a fourteen page supplement to their original written presentation in opposition to the rezoning. The commission, nevertheless, voted to take the application from the table and for the introduction and first reading of a rezoning ordinance.

Final action came on October 6, 1970, when the commission voted four to one for the adoption of the ordinance. (A sufficient protest had been filed, so that the three-fourths vote requirement of K. S. A. 1972 Supp. 12-708 had come into operation.) At this meeting plaintiff's counsel urged the city commission to refer the matter back to the planning board for further consideration, but to no avail.

The next day this suit was filed, challenging the reasonableness of the ordinance, as specifically authorized by K. S. A. 12-712. By agreement of the parties the city was restrained from issuing building permits until the case could be heard on the merits. The city answered, generally denying that the rezoning was unreasonable. Thereafter plaintiffs twice amended their petition, the second amendment raising for the first time the alleged procedural deficiencies complained of in their first point on appeal.

Although no further answer appears on behalf of the city, the defendant Riley Investment Co., Inc. did answer at about the time of trial by way of a general denial. No pretrial order was entered, but the fact of informal pretrial conferences may be gleaned from the record. In December the case was tried, and on January 22, 1971, the trial court filed its memorandum decision containing an extensive discussion of the evidence and applicable law, and specific findings of fact and conclusions of law. It upheld the ordinance on both procedural and substantive grounds.

Plaintiffs' procedural argument is based solely on the provisions of the city's ordinance governing rezoning procedure; there is no suggestion that the requirements of K. S. A. 1972 Supp. 12-708 were not fully complied with, and in particular those relating to notice and hearing which we have held to be mandatory. See, *Carson v. McDowell,* 203 Kan. 40, 452 P. 2d 828; and cf., *Ford v. City of Hutchinson,* 140 Kan. 307, 37 P. 2d 39.

Their attack is aimed at two separate stages of the procedure: first, the application submitted to the planning board did not have appended either a plat or a certified list of the property owners residing within 200 feet of the subject property who are entitled (by statute, as well as by ordinance) to notice of hearing. Both these documents are required by the ordinance to accompany the zoning

application, but neither was supplied until the actual hearing date. The trial court made the following finding:

"Section 11-103 of Ordinance No. 2650, the major zoning ordinance, City of Manhattan, Kansas, a copy of which section is appended hereto, provides, inter alia, that a plat of a subdivision and a certified list of landowners within 200 feet of the property to be rezoned, must accompany a zoning application; said plat and list were not appended to the application in this case, but were, in fact, furnished to the planning commission at the time of the hearing before that agency and further, inasmuch as no claim is made that notice was not properly given as required by K. S. A. 12-708, there is no showing of injury resulting from the technical omission in appending said plat and certified list to the application to rezone."

Plaintiffs' second objection goes to the fact that the planning board's recommendation to the city commission was not in the form required by ordinance. The finding below was:

"Section 11-303 of Ordinance No. 2650, a copy of which paragraph is appended to these findings and conclusions provides, that the planning commission shall make a written report to the city commission which report shall state therein the present zoning classification and the classification under the proposed amendment together with certain reasons and determinations therefore. In the instant case, the planning commission did send a written report to the city commission in which they set out their recommendations as to the present classification and the proposed change, but did not set forth the other determinations required by 11-303. The court finds that the failure to set forth the determinations as required by 11-303 resulted in no injury for the reason that the city commission did have and was conversant with all of said determinations because of their prior knowledge or because such information was made available to them during the four hearings which were conducted on this subdivision; and that the failure to include the determination required by 11-303 in the written report going from the planning commission to the city commission did not result in any injury to plaintiffs in this case."

In its discussion of the evidence the court below observed:

". . . It may not be gainsaid that there was substantial compliance with the procedural requirements contained in the city ordinances, the oral evidence as well as the exhibits persuade that everything that the ordinances were intended to accomplish was in fact accomplished and all of the necessary information to enable the city commission to make an intelligent decision was before the commission."

Plaintiffs do not contend that there was not evidence to support these findings. They nevertheless contend that the procedural requirements of the master zoning ordinance were mandatory, that substantial compliance was not enough, and that the technical deficiencies noted rendered the ordinance void. In support they cite that part of the "construction and interpretation" section of

that ordinance which provides that "except when the context clearly requires otherwise . . . the word 'shall' is mandatory."

We think plaintiffs make too much of a codified rule of construction which is, after all, the same rule as would be applied in the absence of such codification. "Shall" is frequently read to mean "may" where the context requires. See, *e. g., Wilcox v. Billings,* 200 Kan. 654, 438 P. 2d 108; *Elless v. Jackman,* 108 Kan. 403, 195 Pac. 875; *Bank v. Lyman,* 59 Kan. 410, 53 Pac. 125. The real question is whether the city fathers, when they imposed procedural requirements on zoning applicants and the planning board, intended anything more than to provide an orderly procedure and secure for themselves the information necessary to make an informed decision. As we said in *City of Hutchinson v. Ryan,* 154 Kan. 751, 121 P. 2d 179:

"In determining whether statutory provisions are mandatory or directory, it is a general rule that where strict compliance with the provision is essential to the preservation of the rights of parties affected and to the validity of the proceeding, the provision is mandatory, but where the provision fixes a mode of proceeding and a time within which an official act is to be done, and is intended to secure order, system and dispatch of the public business, the provision is directory." (Syl. ¶ 1.)

See also, *Spalding v. Price,* 210 Kan. 337, 502 P. 2d 713; *Wilcox v. Billings,* supra.

The language of the enactment itself may provide some guidance. Thus we said in *Shriver v. Board of County Commissioners,* 189 Kan. 548, 370 P. 2d 124, "Generally speaking, statutory provisions directing the mode of proceeding by public officers and intended to secure order, system and dispatch in proceedings, and by a disregard of which the rights of parties cannot be injuriously affected, are not regarded as mandatory, *unless accompanied by negative words importing that the acts required shall not be done in any other manner or time than that designated."* (p. 556. Emphasis added.) A critical feature of mandatory legislation is often a provision for the consequences of non-compliance. This element was noted by early legal commentators, for in *Bank v. Lyman,* supra, we find this observation (p. 413):

"An essential feature of a statute which undertakes to lay obligations upon the citizen is the vindicatory part. 'It is but lost labor to say, do this or avoid that, unless we also declare this shall be the consequence of your non-compliance. We must, therefore, observe, that the main strength and force of a law consists in the penalty annexed to it.' Blackstone's Commentaries, * 57."

There are no "negative words" in the procedural ordinances nor anything suggesting that the consequence of non-compliance is to render the commission's action void. We cannot infer an intention that such a result should follow where all necessary information is in fact before the commission in one form or another, and the only deficiency is one of form.

It is doubtless true that under the terms of the Manhattan ordinance the planning board could have refused to consider the application, and especially to give notice or to conduct a hearing, until the missing plat and list had been furnished. And by the same token, had the city commission felt the planning board's report failed to supply sufficient information, it could no doubt have re-referred the matter or requested another or a supplemental report. Neither body, however, thought the omissions significant.

Further, had plaintiffs voiced an objection to proceeding without a planning board report in proper form the city commission might have delayed action until this deficiency had been remedied. Plaintiffs, however, voiced no objection based on procedural grounds; they proceeded at each appearance before the commission to contest the rezoning on the merits. They thus demonstrated the soundness of the trial court's finding of "no prejudice" from the procedural irregularities; their injection of the issue into this suit only through their second amended petition would indicate that this complaint was an after-thought. As the encyclopedists say:

"It is a general rule, subject to some limitations and exceptions, that an appellate court will consider only such questions as were raised and reserved in the lower court. The same principle, based upon the demands of orderly procedure and the justice of holding a party to the results of his own conduct, where to do otherwise would surprise his opponent and deprive him of an opportunity to contest an issue in the tribunal which by law is supposed to decide it, and often embraced in specific statutory provisions, applies on review by courts of determinations of administrative agencies so as to preclude from consideration questions or issues which were not properly raised in the proceedings before the agency. A further element in the rule and statutes as applied to administrative agencies is that the requirement that *objections to the proceedings of an administrative agency must be made while it has an opportunity for correction* reflects the policy that a party must exhaust its administrative remedies before seeking judicial review and the related doctrine of primary jurisdiction, which refers matters requiring expert consideration to the administrative agency." (2 Am. Jur. 2d, *Administrative Law*, § 724, p. 624-5. Emphasis added.)

See also, 73 C. J. S., *Public Administrative Bodies and Procedure*, § 177.

We agree with the trial court that the formal deficiencies in procedure, resulting in no prejudice to the plaintiffs, did not vitiate the rezoning ordinance. Had plaintiffs wished to object they should have done so at the city commission level.

We therefore turn to the merits, *i. e.*, the "reasonableness" of the rezoning ordinance. Criteria for making this determination are well established.

"The rules of law which govern this type of proceeding have been set forth and discussed in many of our recent decisions including *Bodine v. City of Overland Park,* 198 Kan. 371, 424 P. 2d 513; *Arkenberg v. City of Topeka,* 197 Kan. 731, 421 P. 2d 213; *Keeney v. City of Overland Park,* 203 Kan. 389, 454 P. 2d 456 and *Waterstradt v. Board of Commissioners,* 203 Kan. 317, 454 P. 2d 445.)

"In *Bodine* and *Keeney* it was pointed out that in determining reasonableness the trial court may not substitute its judgment for that of the governing body and should not declare the action of the governing body unreasonable unless clearly compelled to do so by the evidence. The presumption exists that the governing body acted reasonably, and it is incumbent upon those attacking its action to show the unreasonableness thereof.

"In *Bodine* and *Arkenberg* it was declared that a comprehensive zoning plan prepared and recommended by the planning commission, as contemplated in K. S. A. 1965 Supp. 12-708, does not obligate the governing body of the city to zone property in accordance with the plan.

"In *Arkenberg* and *Waterstradt* it was held that zoning is not to be based upon a plebiscite of the neighbors, although their interests are to be considered, for the final decision of the governing body should be governed by a basic consideration of the benefit or harm involved to the community at large." *Coughlin v. City of Topeka,* 206 Kan. 522, 553, 480 P. 2d 91.)

The trial court's findings on the issue of reasonableness were:

"12. In 1964 the City of Manhattan, Kansas, adopted a Wilson and Company Guide Plan and in 1968 this plan was supplemented by a study referred to as the 1968 Oblinger-Smith Land Use Plan. These two plans combined constitute a general comprehensive plan such as contemplated by Kansas Statutes Annotated 12-704. The general comprehensive plan of the city projected that the Cedar Crest Subdivision could be used for single family residences, duplexes and in certain instances three-family and four-family buildings. *The rezoning from 'R' to 'R-2' was in conformity with the comprehensive general plan adopted and in force at the time the rezoning occurred on October 6, 1970, and by reason of K. S. A. 12-708 rezoning in conformity with comprehensive general plan is presumed to be reasonable unless the contrary is shown.*

"13. The Cedar Crest Subdivision is a 22 acre tract consisting of 54 lots of 13,500 square feet each, which is located in the northwest part of the City of Manhattan, Kansas. The subdivision is bounded on the north by Kimball Avenue which is an arterial street and is bounded on the south by Dickens Avenue which is a collector street. Traffic moving in and out of the subdivision must move into either Kimball Avenue or Dickens Avenue, and

traffic in this subdivision will not move through any low density single-family zone. The streets and sewers in the subdivision are adequate both from the standpont of quality, construction and size to take care of the demands of the subdivision and the subdivision is adequately served by water supply. The subdivision is bounded on the east by an 80 acre park known as Ci-Co Park, the City of Manhattan maintains four baseball diamonds in this park and the Manhattan Board of Education maintains a football stadium with a capacity of approximately 5,000 persons in the park. The Riley County Fair Board has a complex of approximately four buildings located in said park. Mrs. Paul, one of the plaintiffs, testified the chairman of the planning commission told her that the planning commission needed a buffer zone next to the park. *Before this area was taken into the city the county permitted building of duplexes.* When the area came into the city on August 5, 1969, the city ordinance reduced it to single family use.

"14. At the time of trial ten lots of the 54 lots in the subdivision had been sold and single family dwellings were either erected or in the process of construction thereon. A restrictive covenant had been filed on the subdivision restricting the number of duplexes to 33 of the 44 lots remaining in the subdivision at the time of trial. This covenant is enforceable and is significant here in view of plaintiffs' apprehensions. If 31 duplexes are in fact built, consisting of 62 living units, said 62 living units together with the 23 living units on the lots on which single family residences were constructed, would make a total of 85 living units in the subdivision, the living units per acre would be less than four, and less than four living units per acre would constitute a very low density usage, which was admitted by plaintiffs' experts. Professor Weisenberger, one of the plaintiffs' experts, testified the city's action would not be unreasonable intentionally.

"15. That an elementary grade school and neighborhood park are projected for development immediately across Kimball Avenue to the north of the Cedar Crest Subdivision on the comprehensive general plan of the city previously referred to.

"16. The subdivision is served by an arterial and collector street as previously mentioned and adequate utilities are available thereto. It is apparent that the development in the subdivision will be low density usage from the population standpoint; and that government services in the form of schools, churches, parks are available as well as adequate shopping centers. It is apparent that the population density will not be appreciably enhanced as a result of this rezoning for the reasons herein enumerated. Concluding, the court finds that *plaintiffs have not sustained the burden of proof imposed upon them by law to show that the action of the city commission in this instance was arbitrary and capricious.*" (Emphasis added.)

Plaintiffs' attack on these findings is piecemeal. For example, they say that the finding on traffic flow is not supported by evidence; while there were no traffic studies, as such, the court had before it numerous maps and plats, including the city's land use plan, showing existing and proposed arterial and collector streets. They also say the court should not have considered the restrictive covenants,

since to do so would countenance "contract" zoning. The covenants here were not *prerequisites* of the rezoning, nor do we think they were a controlling factor in the court's decision. They were merely considered as they might bear on population density—a key issue raised by plaintiffs. Further, the city's expert planner testified that the rezoning would conform to the master land use plan even if the covenants were ignored. We find no error in the court's recognition of one of the facts in the case.

On the broad issue of reasonableness, plaintiffs say that the applicant had a "burden of proof" before the city commission which it did not meet, and that the trial court's approval of the rezoning was "contrary to the evidence." In this connection we would point out that "Generally speaking, the enactment and amendment of zoning regulations are primarily legislative rather than judicial in character." (*Union Quarries, Inc. v. Board of County Commissioners,* 206 Kan. 268, 273, 478 P. 2d 181.) This is all the more reason for the rule that courts do not "weigh the evidence" before the city commission or substitute their judgment for that of the legislative body. (See, *e. g., Moyer v. Board of County Commissioners,* 197 Kan. 23, 415 P. 2d 261; *Bodine v. City of Overland Park,* 198 Kan. 371, 424 P. 2d 513.) Reference to a "burden of proof" may be appropriate in argument addressed to the city commission before it exercises its legislative authority, but a court reviewing the resulting legislation is not concerned with the quantum of evidence heard by the legislators. Hence, the trial court had no occasion to consider whether the applicant met any "burden of proof" when it prevailed upon the city commission to rezone.

Along the same lines, as an appellate court we are not called upon to determine, as plaintiffs contend, whether the trial court's finding of reasonableness was "contrary to the evidence." The trial court here held that plaintiffs had failed to sustain *their* burden of proof, *i. e.,* to produce evidence which overcame the presumption of reasonableness and "clearly compelled" a finding of unreasonableness. (*Keeney v. City of Overland Park,* 203 Kan. 389, 454 P. 2d 456.) In view of this negative finding, under well-established principles of appellate review our function is only to determine whether there was an "arbitrary and capricious disregard of undisputed evidence or some extrinsic consideration such as bias, passion or prejudice on the part of the trial judge." (*Short v. Sunflower Plastic Pipe, Inc.,* 210 Kan. 68, 500 P. 2d 39, Syl. ¶ 4.)

Putting aside any "extrinsic" considerations, which are not suggested here, we examine briefly the evidence on reasonableness. Plaintiffs' experts opposed the proposal because it offended their aesthetic sensibilities, because it would provide a greater population density than they thought desirable, and because it might lead to commercialization and general deterioration of the neighborhood. The defendants' experts on the other hand, expressed the view that the rezoning would conform to the "low density" contemplated for the area by the city's master land use plan (even if the restrictive covenants were ignored) and would be "compatible with good zoning in this area."

The city planner who gave the quoted opinion was Warren J. Oblinger, who had prepared the city's land use plan. One of the plaintiffs' experts said of him that "he knew Mr. Oblinger and that his credentials were outstanding and that he was competent in the field." While the witness disagreed with Oblinger's conclusions, "it was not uncommon for experts to differ in their field."

In short, the evidence was far from "undisputed;" the question was one on which even experts disagreed. Of similar evidence on a similar zoning controversy we said:

"The most that could be said from the standpoint of plaintiff and those he represents is that the matter may be fairly debatable. That being so, the court may not substitute its judgment for that of the city in order to change the decision on the debate." (*Arkenberg v. City of Topeka*, 197 Kan. 731, 738, 421 P. 2d 213.)

There being a fair dispute, we cannot say that the trial court was compelled to find the city's action unreasonable.

Finally, plaintiffs claim error in the trial court's exclusion of evidence pertaining to other, prior zoning decisions of the city. The court refused to permit plaintiffs' expert witnesses to testify concerning such prior cases, observing, "I fail to see how what happened two years ago, six years ago, ten years ago before another planning commission, before another city commission, could have any effect upon the merits of this case." Counsel was accordingly directed to confine his questioning to the reasonableness of the present rezoning. We are unable to find error in this ruling. It merely restricted the evidence to that which was relevant to the present issues, and rejected that relating to collateral issues or those remote in time. Cf., *State v. Roth*, 207 Kan. 691, 486 P. 2d 1385; *State v. Gauger*, 200 Kan. 563, 438 P. 2d 463, Syl. ¶ 2; *In re Estate of Isom*, 193 Kan. 357, 394 P. 2d 21.

For the same reason it was not error to refuse to permit plaintiffs to use as witnesses an unlimited number of city residents who wished to testify as to their general dissatisfaction with the city commission's handling of zoning matters. The court's ruling, if any, on the number of lay witnesses is not clear, but it is clear that the court expected them as well as the experts to confine themselves to the issues at hand. We cannot say that this was an abuse of discretion.

The judgment is affirmed.

APPROVED BY THE COURT.