No. 47,403

City of Manhattan, Kansas, a Municipal Corporation, *Appellee,* v. Ridgeview Building Company, Inc., a Corporation, *Appellant.*

(527 P. 2d 1009)

Opinion filed November 2, 1974.

*Hugh H. Kreamer,* of Breyfogle, Gardner, Martin, Davis & Kreamer, of Olathe, argued the cause and was on the brief for the appellant.

*Edward F. Horne,* of Fick, Myers, & Horne, of Manhattan, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal in an action instituted by the City of Manhattan, Kansas, (plaintiff-appellee) seeking to enforce the terms of an ordinance granting planned development district zoning to Ridgeview Building Company, Inc., (defendant-appellant) for the construction of a multi-family housing project in the City of Manhattan.

The controversy stems from the city commission's amendment of the landscaping provisions in the development plan submitted by Ridgeview and approved by the planning board. The issue presented is the validity of the amendment to the development plan.

The case was tried to the District Court of Riley County which held the city had substantially complied with its ordinances in the master zoning code and K. S. A. 1971 Supp. 12-708 (now 1973 Supp.). The district court directed Ridgeview to comply with the landscaping provisions as amended.

Ridgeview Building Company, Inc., (hereinafter referred to as Ridgeview) was the developer-contractor on a Federal Housing Administration financed cooperative housing project called Prairie Glen Townhouses in Manhattan, Kansas. On June 9, 1969, Ridgeview sought planned development district zoning for the project site by making an initial request to the city planning board and submitting a preliminary development plan. The preliminary development plan includes, among other things, a survey of the tract to be developed, a site plan, a preliminary plat of subdivision, a statement of anticipated residential density, and preliminary sketches of the proposed structures and *landscaping.* A public hearing was held before the planning board on September 8, 1969, after which the board recommended the rezoning of the project site to planned development district and it approved the preliminary development plan as submitted by Ridgeview.

On October 7, 1969, the governing body of the City of Manhattan conducted the first reading of an ordinance granting planned development zoning at the project site in accordance with the preliminary plan.

On October 21, 1969, the governing body conducted a second, and final, reading of the proposed ordinance. The minutes of the meeting disclose:

"The Commission discussed the Planned Development District on a 9-acre tract north of Allen Road and west of Casement Rd. which was approved by the Planning Board on Sept. 8, 1969. Motion by Commissioner Lindblom seconded by Commissioner Rehschuh carried *to revise the plans to include an 11 foot buffer zone along the entire west side of the project,* of which 5 feet is to be sidewalk *and the remaining 6 feet be used to screen the project from adjoining property by a densely planted compact evergreen hedge or fence not less than six feet in height.* Ordinance No. 2670, to establish planned development district on 9-acre tract north of Allen Road and west of Casement Rd. *as amended* was read and on motion by Commissioner Rehschuh seconded by Commissioner Lindblom to adopt by sections and as a whole the roll was called. Mayor Yeo, Commissioners Rehschuh, Lindblom, Linder voting 'aye' and Commissioner Hanks voting 'nay' *the ordinance was declared duly adopted."* (Emphasis added.)

At the trial two individuals, who had been city commissioners during the October 21 meeting, testified as to their recollection. Mr. Lawrence Lindblom testified that a man was present at the meeting representing Ridgeview. Lindblom did not know the name of the person he believed represented Ridgeview but described him as "a very distinguished, gray-haired gentleman." The witness further stated *the action of the city amounted to an amendment of the preliminary development plans; the proposed revision concerning the buffer zone had not been sent back to the planning commission for its consideration;* he *assumed* the revision of the preliminary plans would be marked on the final plan before it was officially signed and documented; the final plan had been modified to implement the revision. Mr. Robert Linder also testified that to the best of his recollection there was a representative of Ridgeway at the October 21 meeting.

On November 3, 1969, Ordinance No. 2670 was first published in the Manhattan Mercury. It recites that the project site in question is:

". . . [R]ezoned as Planned Development District be and it is hereby *subject to all the regulations and restrictions contained in the development Plan heretofore filed and approved by the Planning Board of the City of Manhattan, Kansas, and the City Commission of Manhattan, Kansas, and as amended by City Commission of Manhattan, Kansas on October 21, 1969,* which regulations and restrictions are incorporated into this ordinance and made a part hereof *as if fully set out herein."* (Emphasis added.)

The record is not clear as to what actually occurred with respect to the screening on the west side of the project site. Apparently Ridgeview completed construction of the townhouses and began planting a pfitzer juniper hedge along the west side in accordance

with the preliminary development plan on file with the City of Manhattan, when adjoining property owners conferred with Ridgeview about installing a stockade-type privacy fence. Ridgeview agreed to install such a fence, but after the installation was begun, there were further complaints concerning the location of the fence. At this time city officials orally ordered work on the fence to cease and also ordered removal of the portion of the fence which had been installed. Ridgeview complied and did not thereafter plant a compact evergreen hedge.

Thereafter the City of Manhattan instituted this action to compel Ridgeview to comply with the "revised portion" of the development plan to screen the project from adjoining property by a densely planted compact evergreen hedge not less than six feet in height along the west line of the tract in question.

The trial in this case was held on June 29, 1973. The only witnesses presented by the city were Lawrence Lindblom and Robert Linder, the city commissioners whose testimony has heretofore been related. Ridgeview did not call any witnesses. However, on July 18, 1973, an affidavit was filed with the court in which Roy Lamberson, president of Ridgeview, stated that since the trial he had determined that neither he nor any other representative of Ridgeview had been present at the October 21, 1969, city commission meeting. Lamberson believed from the description given by the city's witnesses that the person they were referring to was the representative of the cooperative association, the prospective owner, and not Ridgeview. Ridgeview's request to introduce the affidavit into evidence was denied upon objection by the city.

Ridgeview's position before the trial court was that under K. S. A. 1973 Supp. 12-708 the city governing body could not, as a matter of law, revise or amend the preliminary development plan without referring the matter back to the city planning board for their reconsideration.

Insofar as relevant to the case at bar K. S. A. 1973 Supp. 12-708 provides:

". . . The governing body may from time to time supplement, change or generally revise the boundaries or regulations contained in such zoning ordinance by amendment. A proposal for such amendment may be initiated by the governing body, the planning commission or upon application of the owner of property affected. . . . All such proposed amendments shall first be submitted to the city planning commission for recommendation and report. Upon the development of tentative recommendations, the planning

commission shall hold a public hearing thereon. . . . *The procedure for the consideration and adoption of any such proposed amendments shall be in like manner as that required for the consideration and adoption of the original zoning ordinance* except where hereinbefore or hereinafter modified. For action on zoning amendments, a quorum of the planning commission is more than one-half of all the members. A vote either for or against an amendment by a majority of all of the planning comissioners present constitutes a recommendation of the planning commission; whereas a vote either for or against an amendment by less than a majority of all of the planning commissioners present constitutes a 'failure to recommend.' When the planning commission submits a recommendation of approval or disapproval of such amendment, the governing body if it approves such recommendation may either adopt such recommendation by ordinance or take no further action thereon, as appropriate. In the event the planning commission submits a 'failure to recommend' to the governing body, the governing body may take such action as it deems appropriate. *Upon receipt of a recommendation of the planning commission which the governing body disapproves, the governing body shall return such recommendation to the planning commission with a statement specifying the basis for disapproval and such recommendation shall be considered in like manner as that required for the original zoning recommendations returned to the planning commission. . . ."* (Emphasis added.)

The portion of 12-708, *supra*, dealing with original zoning recommendations returned to the planning commission provides that:

". . . The planning commission, after reconsidering the same, may resubmit its original recommendations giving the reasons therefor or submit new and amended recommendations. Upon the receipt of such recommendations, the governing body may adopt or may revise or amend and adopt such recommendations by ordinance, or it need take no further action thereon. If the planning commission fails to deliver its recommendations to the governing body within ten (10) days after receipt of the governing body's statement specifying disapproval, the governing body shall consider such course of inaction on the part of the planning commission as a resubmission of the original recommendations and proceed accordingly. . . ."

On the facts here presented Ridgeview's submission of the preliminary plan for planned development district zoning constituted an application of the owner to amend the original zoning ordinance from limited residential (R Single Family) to a planned development district for townhouses. The preliminary plan submitted by Ridgeview was approved by the planning commission to pursuant to requirements of the statute and recommended to the governing body of the city for adoption by ordinance. If adopted by the city governing body this would constitute an "amendment", under the terms of the statute, of the original zoning ordinance covering the tract of land in question.

Subsequent action by the city governing body, "to revise the plans to include an 11 foot buffer zone along the entire west side of the

project, of which 5 feet is to be sidewalk and the remaining 6 feet to be used to screen the project from adjoining property by a densely planted compact evergreen hedge or fence not less than six feet in height", constituted a *disapproval* of the planning commission's recommendation to adopt the preliminary plan as submitted. As such, the governing body was required to return "such recommendation" to the planning commission with a statement specifying the basis for disapproval.

At this point the city governing body departed from the requirements of the statute. It failed to return the preliminary plan for planned development district zoning (the planning commission's recommendation) to the planning commission with a statement specifying the basis for disapproval.

The trial court rejected Ridgeview's position and stated in its conclusions:

"The court further concludes that the action of the city governing body did not constitute a disapproval of the planning commission's recommendations at the governing body's October 21, 1969, meeting. The governing body approved the basic plan of changing an area from limited residential (R Single Family) to a Planned Development District for Townhouses. That was the essence of the proposal that had been approved by the planning commission. *The addition of the provision for some extra landscaping by the governing body cannot be construed as a disapproval or a passing of unfavorable judgment upon the planning commission's work and recommendation.* The action by the city was in substantial compliance with its ordinance and K. S. A. 12-708, 1972 Supp. No substantial change was made in the planning commission's recommendation as to the zoning, merely an alteration in the landscaping affecting one side of the area involved." (Emphasis added.)

The City of Manhattan Zoning Ordinance No. 2650 requires a developer seeking the establishment of a planned development district to submit a preliminary development plan to the planning board; the planning board is then required to hold a public hearing to consider all aspects of the preliminary plan; the planning board may recommend disapproval, or approval with amendments, conditions or restrictions to the governing body; the governing body is then required to approve or disapprove the preliminary development plan within 30 days after receiving the findings and recommendations of the planning board. Section 9-104 (B) (3) of Zoning Ordinance No. 2650 authorizes the governing body to alter the preliminary development plan in the following manner:

"Restrictions and Conditions. The City Governing Body may alter the preliminary development plan, and impose such restrictions and conditions on

the planned development as it may deem necessary to insure that the development will be in harmony with the general purpose and intent of these regulations and with the comprehensive plan of the Manhattan Planning area. When the City Governing Body alters the preliminary development plan, or imposes any restrictions or conditions on such plan, *the developer shall have 15 days within which to file an acceptance of such alterations, restrictions, or conditions with the City Governing Body. When an acceptance is required by this section, no ordinance approving a preliminary development plan and establishing planned development district shall be adopted until such acceptance has been filed with the Planning Board.*" (Emphasis added.)

In the case at bar, Ridgeview did not file a written acceptance of the alterations made by the city governing body to the preliminary development plan with either the "City Governing Body" or with the "Planning Board." The trial court found from the testimony of the city commissioners that Ridgeview had a representative present at the October 21, 1969, city commission meeting, and further that:

"While Section 9-104 (B) (3) of the city's article on Planned Development Districts in the Master Zoning Code does state that the developer shall have fifteen days to file an acceptance of any restrictions or conditions made in the preliminary development plan by the governing body, the court does not conclude the word 'file' necessarily means the execution of a written acceptance in this case, even though such would be preferred, inasmuch as such acceptance by the terms of the above provisions of the statute is to be filed with the governing body and not with the planning board. That the oral acceptance made by defendant's respresentative sufficiently complies with the requirements of the ordinance."

The confusion resulting from the action taken by the governing body of the city is readily apparent. To exemplify the confusion the fragmentary record presented and the briefs of the respective parties disclose that the governing body of the city failed to comply with other provisions set forth in Zoning Ordinance No. 2650.

The "Landscape Plan" (Exhibit 2), consisting of preliminary sketches and landscaping, filed with the preliminary development plan was never amended or altered in any way. It required the developer to plant a pfitzer juniper evergreen screen 1186 feet in length on the west side of the tract. Ridgeview installed this pfitzer juniper evergreen screen in compliance with the "Landscape Plan". Section 9-105 (A) of Zoning Ordinance No. 2650 provides:

"Status of Preliminary Development Plan after Approval. "(A) Within seven days after the adoption of an ordinance approving a preliminary development plan and establishing a planned development district such ordinance shall be certified by the Clerk of the City and shall be filed in the office of the Zoning Administrator. A certified copy shall be mailed to the developer.

When approval of a preliminary plan has been granted, the same shall be noted on the zoning map maintained in the office of the Zoning Administrator."

While the city governing body apparently regarded its adoption of Ordinance No. 2670 as an approval of the Preliminary Development Plan, as altered, the record does not disclose that there has been compliance with any of the foregoing provisions in section 9-105 (A).

Ridgeview contends it had no knowledge of the alterations and denies acquiescence in the change.

While Ridgeview is bound by the trial court's finding to the contrary, the foregoing is related to show the confusion resulting from the failure of the city governing body to comply with the statute (12-708) and its ordinance.

We are informed in the appellant's brief the project has been completed, and the land on which it is constructed has long since been turned over to the cooperative, which is now the owner. The appellant contends the cooperative should have been made a party to this action. An interesting question, which we do not reach, is how can Ridgeview be ordered to plant a compact evergreen screening hedge on land which it does not own, and over which it has no right of control?

It has been established for many years in this jurisdiction that the power of a city government to change the zoning of property can only be exercised in conformity with the statute which authorizes the zoning (*Ford v. City of Hutchinson,* 140 Kan. 307, 37 P. 2d 39). The court has more recently recognized the general rule that a city must strictly pursue the procedure provided by the statute enabling the city to zone to enact a valid zoning ordinance. (*Koppel v. City of Fairway,* 189 Kan. 710, 371 P. 2d 113.)

We are not called upon in this case to determine whether Zoning Ordinance No. 2650 of the City of Manhattan complies with the requirements of K. S. A. 1973 Supp. 12-708, and our opinion should not be construed as deciding the point. The question has not been briefed and the record is too fragmentary to consider the matter.

Blessed with favorable findings by the trial court as to the facts in the case, the appellee argues the governing body of the City of Manhattan did adopt what the planning board recommended as to the zoning classification change for the site in question; and that the governing body made a "mere modification or supplement of the screening requirements" along the west side of the project

upon final reading or passage of Ordinance No. 2670. This "modification or supplement" was authorized, it is contended, by the city's general zoning code regulating planned development districts (Section 9-104 [B] [3], Ordinance No. 2650).

Upon the foregoing premise, it is argued, the appellant agreed to the alteration of the screening, and it should not be heard to complain of some procedural irregularity such as its own failure to file a written memorial of what it had already agreed to do. The appellee cites *Paul v. City of Manhattan,* 212 Kan. 381, 511 P. 2d 244, for the proposition that the failure of the developer to object to some procedural irregularity as it occurs, when appearing before the governing body on a zoning matter, is fatal to raising the objection at a later date.

As we view the case the points asserted by the appellant, attacking the findings made by the trial court, and the trial court's refusal to consider the affidavit of Roy E. Lamberson on motion to give additional testimony in the case, are immaterial. The issue here presented is a single question of law. Are the provisions of K. S. A. 1973 Supp. 12-708, regarding the city governing body's disapproval of the planning commission's recommendation to adopt the preliminary plan as submitted, mandatory or directory?

In *City of Hutchinson v. Ryan,* 154 Kan. 751, 121 P. 2d 179, this court held:

"In determining whether statutory provisions are mandatory or directory, it is a general rule that where strict compliance with the provision is essential to the preservation of the rights of parties affected and to the validity of the proceeding, the provision is mandatory, but where the provision fixes a mode of proceeding and a time within which an official act is to be done, and is intended to secure order, system and dispatch of the public business, the provision is directory." (Syl. ¶ 1.)

The subject was further discussed at some length in *Paul v. City of Manhattan,* supra.

A careful analysis of the statute in question (12-708) discloses the city planning commission is the only body required to give notice and to conduct a public hearing pursuant to published notice. In *Carson v. McDowell,* 203 Kan. 40, 452 P. 2d 828, the provision in K. S. A. 1965 Supp. 12-708 (now 1973 Supp.) for publication notice of a purposed change in zoning was held to be mandatory and must be complied with in order to give the planning commission authority to recommend, and the city commission jurisdiction to enact, the ordinance.

On the facts in this case the revision made by the city governing body concerning the screening of property adjacent to the tract in question for which the developer sought rezoning. This involved a controversy between adjacent property owners, the developer, the Federal Housing Authority (the Foundation for Cooperative Housing, a subdivision of the Department of Housing and Urban Development) and the prospective owner of the housing project. If these parties are entitled to a hearing on the matter in controversy, it is only before the city planning commission that the statute authorizes them to be heard.

We construe the alteration of the preliminary development plans made by the city governing body to be a disapproval of the planning commission's recommendation to adopt the preliminary plan as submitted, and the provision of the statute (12-708) requiring that "the governing body shall return such recommendation to the planning commission with a statement specifying the basis for disapproval" under these circumstances to be a mandatory requirement of the statute. Careful analysis of the entire statute (12-708) indicates the legislature intended the provision in question to be mandatory when it used the word "shall".

Because the city failed to comply with the foregoing mandatory provision in the statute, and for the additional reason that the city failed to comply with its own zoning ordinance (No. 2650), the alteration of the preliminary development plan by the governing body of the City of Manhattan on October 21, 1969, "to include an 11 foot buffer zone along the entire west side of the project, of which 5 feet is to be sidewalk and the remaining 6 feet to be used to screen the project from adjoining property by a densely planted compact evergreen hedge or fence not less than six feet in height", is invalid.

The judgment of the lower court is reversed.